Filed 7/8/16  Janice H. v. 696 North Robertson, LLC CA2/3

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| JANICE H., | B256913 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. SC111853) |
| v. | |
| 696 NORTH ROBERTSON, LLC, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Lawrence Cho, Judge.  Affirmed.

Lewis Brisbois Bisgaard & Smith, Jeffry A. Miller, Lann G. McIntyre; Foley & Mansfield, Joseph V. Macha and Louis C. Klein for Defendant and Appellant.

Taylor & Ring, John C. Taylor, James W. Lewis; Esner, Chang & Boyer, Holly N. Boyer and Shea S. Murphy for Plaintiff and Respondent.

_____

**INTRODUCTION**

Doing business as Here Lounge, Defendant 696 North Robertson, LLC owns and operates a successful West Hollywood bar and dance club. It appeals from a judgment based on the jury's award of $5.42 million in compensatory damages to Plaintiff Janice H. for failing to use reasonable care to protect her from a sexual assault in a unisex bathroom stall. Here Lounge asserts it did not owe or breach a duty to Plaintiff and did not cause Plaintiff's injury. Here Lounge argues that the court abused its discretion by erroneously admitting irrelevant and prejudicial evidence. Lastly, Here Lounge contends that the jury's noneconomic damages award was excessive and punitive in nature. We affirm on all grounds.

## FACTS AND PROCEDURAL BACKGROUND

On a Sunday in March 2009, Plaintiff drank with a friend at bars in Pasadena and then in West Hollywood. Towards the end of the night, the two were separated. Because they had talked about going to Here Lounge, Plaintiff went to Here Lounge to wait for her friend. At the time, Here Lounge was a very popular West Hollywood dance club and bar. On Sundays, as many as 500 people patronized the club. To attract customers, Here Lounge hired promoters who used social media to encourage attendance at special events with sexy themes. For example, the theme when Plaintiff visited the bar was "size matters." Here Lounge also fostered a sexually charged atmosphere by permitting bartenders to wear nothing but underwear.

Here Lounge designed the bar to have a common restroom area accessible to both men and women. On busy nights, a long line of patrons waited to use the restrooms. The restroom area included four adjacent lockable unisex bathroom stalls, an open area behind the stalls with a urinal trough, and two larger Americans with Disabilities Act (ADA) compliant stalls off to one side. Unlike the four unisex stalls, the ADA stalls had lockable, full-length doors. Though each ADA stall was assigned a gender and the men's ADA stall was adjacent to the urinal trough, patrons treated the ADA stalls as unisex and used them interchangeably.

On a nightly basis, Here Lounge hired as many as 12 security guards to check identification at the door and maintain order in the club. On Sunday nights, it posted

eight to 10 guards throughout the club including one or two stationed on either side of the four adjacent stalls in the restroom area. The restroom area security guards were instructed to prevent more than one patron from entering a single bathroom stall at the same time. If a security guard saw two or more people entering a stall, he would stop them. If more than one person entered a stall before the security guard could intervene, he would knock and demand that they exit. The guards routinely took action to prevent sexual activity, drug use, and conflicts among patrons in the restroom area.

On that Sunday, Plaintiff arrived at around 11:39 p.m. Feeling intoxicated, Plaintiff drank water and sat on the patio. Some 15 to 45 minutes later, Plaintiff went to the restroom area, where no guards were present. Although the club's policy was to have one or two guards in the restroom area, the guards had discretion to leave their posts in the restroom area and roam the club when there were only a few dozen patrons in the club and very few in the restroom area. While roaming, they periodically checked on the restroom area.

Plaintiff went into an ADA stall and shut the door. As was common among patrons of Here Lounge, Plaintiff did not lock the door. While Plaintiff was turning and sitting down, a man she had never seen before entered the stall. Based on DNA evidence, the man was later identified as Victor Cruz,[1] a bus boy at Here Lounge.[2] When Plaintiff stood up to adjust her clothing, Victor grabbed her shoulders and pushed her against the wall. Victor forced Plaintiff to orally copulate him and forcibly had vaginal intercourse with her.

The assault, which caused Plaintiff to lose her virginity, lasted about five minutes and ended with Victor ejaculating on Plaintiff's dress. Plaintiff, bleeding and shaken, fled the bar and contacted the police with the assistance of a stranger on the street.

---

[1] We subsequently refer to him as Victor because we later discuss his brother, who shares his last name.

[2] Here Lounge busboys regularly passed through the restroom area on their way to the trash and storage rooms at the rear of the club.

Although Here Lounge security found a large puddle of blood in an ADA stall, it did not connect it to the sexual assault until days later when police investigated the incident. Victor's DNA sample matched the sample of DNA taken from semen on Plaintiff's dress at the rape treatment center. Plaintiff identified Victor as the rapist from a photo-lineup.

Plaintiff sued Here Lounge and Victor, alleging (1) sexual battery, (2) negligence, (3) negligent hiring, supervision, and retention, and (4) violation of the Unruh Civil Rights Act. Victor defaulted and did not testify at trial. Before trial, the court ruled on several motions in limine. The court granted Plaintiff's motion in limine to exclude evidence of Victor's acquittal on criminal assault charges. The trial court denied Here Lounge's motion to exclude a police interview of Victor videotaped by law enforcement.

Here Lounge moved to exclude evidence that Here Lounge's general manager, Jude Tade, fired Victor's brother, Mario Cruz, for having sex with a woman in the bathroom when they worked at another bar, Fiesta Cantina. After moving to Here Lounge, Tade hired Mario notwithstanding his history, and subsequently hired Mario's brother, Victor. The court denied Here's Lounge's motion.

At the conclusion of the Plaintiff's presentation of evidence at trial, the court granted Here Lounge's motion for directed verdict as to Plaintiff's causes of action for negligent hiring, supervision, and retention of Victor.[3] Although the court denied the motion for directed verdict as to negligent supervision of security guards, Plaintiff later withdrew that cause of action. Plaintiff also abandoned her claims for punitive damages and her Unruh Civil Rights Act and Ralph Act causes of action, leaving premises liability as the sole cause of action to be decided by the jury. In closing argument, Plaintiff's counsel requested $7,000 in future economic damages, and suggested $7.1 million to $11.2 million for future noneconomic damages.

---

[3]     Following Plaintiff's opening statement, Here Lounge moved for a nonsuit based on the lack of evidence to support foreseeability, causation, negligent hiring, negligent retention, and negligent supervision of Victor. The court denied the nonsuit motion.

The jury returned a verdict in favor of Plaintiff and against Here Lounge for negligence and Victor for battery. The jury also found that Here Lounge's negligence was a substantial factor in causing harm to Plaintiff, and that Plaintiff was not comparatively at fault. The jury awarded a total of $5.42 million in damages (future economic damages of $70,000, past noneconomic loss in the amount of $1.25 million, and $4.1 million in future noneconomic loss). The jury apportioned 40 percent responsibility to Here Lounge and 60 percent to Victor.

Here Lounge filed a motion for new trial and a motion for judgment notwithstanding the verdict. The court rejected Here Lounge's claim of excessive damages, acknowledging the emotional suffering Plaintiff endured in the four to five years between the incident and trial. Considering "the evidence of [P]laintiff's 'emotional resilience' and significant recovery and improvement since the 2009 attack," the court had "difficulty in justifying" the jury's award of future noneconomic damages three times greater than the award for past noneconomic damages, but could not "say . . . the jury clearly should have reached a different result." The court entered judgment in favor of Plaintiff on March 21, 2014, finding Here Lounge and Victor jointly and severally liable for the $5.42 million in damages.

## DISCUSSION

Here Lounge frames the issues as Plaintiff's failure to prove (1) it had a duty to provide security guards in the restroom area, (2) it breached its duty to Plaintiff, and (3) it caused Plaintiff's injuries. Here Lounge also argues unfair prejudice based on the court's admission of testimony regarding Mario's prior sexual misconduct in another work place and Victor's videotaped police interview. Lastly, Here Lounge asserts that the noneconomic damages were excessive and punitive in nature. We address each argument in turn.

### 1.     Here Lounge Owed a Duty to Plaintiff

The question before this Court is not whether Here Lounge had a duty to provide security guards. The issue is whether Here Lounge owed a duty to use reasonable care in securing the restroom for its patrons. (See *John B. v. Superior Court* (2006) 38 Cal.4th

5

1177, 1188 ["To prevail in an action for negligence, the plaintiff must demonstrate that the defendant owed a duty to the plaintiff, that the defendant breached that duty, and that the breach proximately caused the plaintiff's injuries."].)  Here Lounge asserts it owed no duty of care to Plaintiff because the assault was not foreseeable.   The existence of duty is a question of law for the court to determine.  (*Isaacs v. Huntington Memorial Hospital* (1985) 38 Cal.3d 112, 124 (*Isaacs*).)  Therefore, unlike the factual issues of breach and causation, which we address later, we review this issue de novo.  (*Ann M. v. Pacific Plaza Shopping Center* (1993) 6 Cal.4th 666, 674, overruled on other grounds by *Reid v. Google, Inc.* (2010) 50 Cal.4th 512, 527, fn. 5.)

To assess the existence and scope of Here Lounge's duty, we balance several factors specified by the Supreme Court in *Rowland v. Christian* (1968) 69 Cal.2d 108 (*Rowland*):  "the foreseeability of harm to the plaintiff, the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, the policy of preventing future harm, the extent of the burden to the defendant and consequences to the community of imposing a duty to exercise care with resulting liability for breach, and the availability, cost, and prevalence of insurance for the risk involved."  (*Id.* at p. 113, partially superseded by statute on a different issue in *Greenberg v. Superior Court* (2009) 172 Cal.App.4th 1339, 1352, fn. 8).)  Foreseeability of harm to the plaintiff and the extent of the burden on the defendant are the most important considerations in performing a duty analysis.  (*Castaneda v. Olsher* (2007) 41 Cal.4th 1205, 1213 (*Castaneda*).)

Foreseeability " 'is an elastic factor' " in the balancing test and the necessary degree of foreseeability to find a duty varies on a case by case basis.  (*Isaacs, supra,* 38 Cal.3d at p. 125.)  Where the burden on the defendant to prevent the harm would be great, there must be a high degree of foreseeability to impose liability.  (*Ibid*.)  Conversely, where the burden on the defendant is minimal, a lesser degree of foreseeability is necessary to impose liability.  (*Ibid*.; see *Delgado v. Trax Bar & Grill* (2005) 36 Cal.4th 224, 245 (*Delgado*) [absence of heightened foreseeability *does not*

signify that the defendant owed no duty to the plaintiff; the defendant may still have the duty to take reasonable, relatively simple, minimally burdensome measures.].) Foreseeability " 'includes whatever is likely enough in the setting of modern life that a reasonably thoughtful [person] would take account of it in guiding practical conduct.' [Citation.] One may be held accountable for creating even ' "the risk of a slight possibility of injury if a reasonably prudent [person] would not do so." ' " (*Bigbee v. Pacific Tel. & Tel. Co.* (1983) 34 Cal.3d 49, 57 (*Bigbee*).)

To assess the extent of the defendant's duty, we evaluate whether in the management of its property, the defendant has acted as a reasonable person in view of the probability of injury to others. (*Rowland, supra,* 69 Cal.2d at p. 119.) A possessor of land "owes a duty to an invitee to make the property reasonably safe for the intended use by the intended user." (*Beauchamp v. Los Gatos Golf Course* (1969) 273 Cal.App.2d 20, 27.) Thus, the property holder only "has a duty to protect against types of crimes of which he has notice and which are likely to recur if the common areas are not secure." (*O'Hara v. Western Seven Trees Corp.* (1977) 75 Cal.App.3d 798, 802-803 (*O'Hara*).) The Court's focus in determining duty " ' "is not to decide whether a particular plaintiff's injury was reasonably foreseeable in light of a particular defendant's conduct, but rather to evaluate more generally whether the category of negligent conduct at issue is sufficiently likely to result in the kind of harm experienced that liability may appropriately be imposed on the negligent party."[Citation.]' " (*Friedman v. Merck & Co.* (2003) 107 Cal.App.4th 454, 465, italic omitted.) As the Supreme Court explained in *Castaneda, supra,* 41 Cal.4th at page 1213, we look to the circumstances of the case to see if the defendant was on notice of facts making the harm at issue foreseeable.

In this case, Here Lounge promoted a sexually charged atmosphere and designed an open restroom area allowing unrestricted entry for men and women. It designed the larger ADA stalls with full length walls shielding the occupants from view. Here Lounge knew that sexual activity in the restrooms and elsewhere in the club was an ongoing issue. On the night of Plaintiff's rape, video footage documented two men in a single stall for about 15 minutes. Footage also captured three people entering a single bathroom

7

stall, a male and a female in the same stall, and two couples on the patio straddling each other and kissing. Other footage appeared to show a woman using the men's urinal trough, conduct that was against the rules and should have been prevented. There was testimony that sexual activity in the club increased towards the end of the night and tended to occur in the ADA bathroom stalls, like the stall where Plaintiff was raped, because the full length doors shielded the occupants from view. The owner also admitted that an employee once observed a woman performing oral sex on a man at the club and ignored it.

The owner, the club manager, and the head of security all recognized the danger that sexual conduct behind locked doors in the restroom stalls could easily be or become nonconsensual. The club was also aware that patrons were often intoxicated and neglected to lock the bathroom stall doors. To prevent multiple people from entering a bathroom stall together Here Lounge usually stationed a guard on either side of the four unisex stalls with a clear view of the ADA stalls. When the club was down to a small number of patrons, the posted restroom area guards had discretion to leave their posts and roam the club while periodically checking the restroom area.

This evidence taken together made the risk of harm to intoxicated and vulnerable patrons reasonably foreseeable, regardless whether the club was on notice of a prior similar incident. Knowing the potential serious harm of non-consensual sex, a reasonable person managing the property would have posted a guard in the restroom area whenever the club was open to the public, even when attendance tapered off. The burden for monitoring the restroom area during business hours was small, requiring only a change in policy to eliminate the guards' individual discretion to leave the restroom area and roam the premises when patronage dwindled.

Here Lounge argues it has no duty unless and until it experiences a similar criminal incident. We disagree. While a property holder generally has a duty to protect against types of crimes of which he is on notice, the absence of previous occurrences does not end the duty inquiry. (*O'Hara, supra,* 75 Cal.App.3d at p. 802-803.) We look to all of the factual circumstances to assess foreseeability. (See *Isaacs, supra,* 38 Cal.3d

8

at p. 130.) As explained above, Here Lounge's failure to experience an earlier incident must be measured against the level of burden imposed by the duty of care. In this case, the added burden is minimal.

Moreover, having elected to employ multiple security guards and station them in the restroom area, Here Lounge assumed a duty of reasonable care with regard to the security guards' deployment. (See *Bloomberg v. Interinsurance Exchange* (1984) 162 Cal.App.3d 571, 575 ["A defendant who enters upon an affirmative course of conduct affecting the interests of another is regarded as assuming a duty to act, and will be liable for negligent acts or omissions [citations], because one who undertakes to do an act must do it with care. . . . 'Where performance clearly has begun, there is no doubt that there is a duty of care.' "].) The Supreme Court addressed this duty in *Delgado* where a plaintiff was assaulted in a parking lot ordinarily staffed with a security guard. (*Delgado, supra,* 36 Cal.4th 224 at pp. 230-232.) In that case, the plaintiff's wife warned an inside guard about a possible fight and the guard suggested they leave the bar to avoid a confrontation. The inside guard did not accompany them to their car and, as it happened, the outside guard was not at his post when hostile patrons and their associates beat the plaintiff in the parking lot. (*Id.* at p. 231.) After the plaintiff sued the bar under a premises liability theory and won, the bar "appealed, contending that because there was no evidence of prior similar criminal assaults either on its premises or in the vicinity, the assault upon plaintiff was unforeseeable as a matter of law, and that as a consequence it owed no duty to provide a security guard and thus could not be held liable for plaintiff's injuries." (*Id.* at pp. 232-233.)

The Supreme Court held that the lack of a prior similar incident simply meant that there was no "heightened foreseeability," justifying the imposition of a standard of care requiring *burdensome* security measures. (*Delgado, supra,* 36 Cal.4th 224 at p. 245.) The Court explained that "the absence of heightened foreseeability in this case merely signifies that defendant owed no special-relationship-based duty to provide guards or undertake other similarly burdensome preventative measures; it does not signify that defendant owed no other special-relationship-based duty to plaintiff, such as a duty to respond to events unfolding in its presence by undertaking reasonable, relatively simple, and minimally burdensome measures." (*Ibid.*, italics omitted.) The Court concluded the bar owner owed a duty of reasonable care and that guards using reasonable care would have kept the plaintiff and the hostile bar patrons apart in order to avert the assault. (*Id.* at pp 246-247.) Likewise in this case, the lack of a prior similar incident lessens the foreseeability and militates against imposing a duty of care requiring *particularly burdensome* measures. It does not, however, eliminate the defendant's duty of reasonable care.

Here Lounge argues that "[i]f a security guard was forced to remain in the [restroom area] at all times, no matter the size of the crowds, patrons in other areas of the club would be deprived of the benefit of a security presence unless Here Lounge hired and paid for additional security guards for the entire night." Here Lounge cites no evidence supporting this contention. The evidence at trial was that Here Lounge stationed one or two guards in the restroom area most of the time but gave them discretion to leave their posts and roam the club when the crowd thinned out. There is no evidence the guards' discretion to roam depended on a need for additional security guards elsewhere in the club. Here Lounge therefore failed to demonstrate that changing the policy to eliminate roaming would be burdensome, let alone unduly burdensome.[4]

---

[4] We reject Here Lounge's assertions that foreseeability hinged on evidence that Victor, specifically, had the propensity to attack someone. The case, as it was ultimately framed to the jury in the verdict form, was solely about premises liability, not negligent hiring, making Victor's past criminal conduct irrelevant.

In sum, Here Lounge's design of the restroom area was intentional and created opportunities for sexual activities concealed behind locked doors. Here Lounge fostered a sexually charged atmosphere and had notice of an obvious pattern of sexual conduct throughout the club and particularly in the restroom area. Here Lounge's managers knew that sexual encounters within the restroom could be, or easily become, nonconsensual. Under these circumstances, Here Lounge had a duty to ensure safety by undertaking minimally burdensome security measures, like requiring one of its security guards to remain posted in the restroom as the club emptied out.

**2.      Substantial Evidence Supports Breach of the Duty of Care**

Here Lounge asserts that there was insufficient evidence that it breached a duty to Plaintiff. "When a party contends insufficient evidence supports a jury verdict, we apply the substantial evidence standard of review." (*Wilson v. County of Orange* (2009) 169 Cal.App.4th 1185, 1188 (*Wilson*).) We view the evidence in the light most favorable to the prevailing party and give the benefit of each reasonable inference and resolve all conflicts in the prevailing party's favor. (*Ibid.*) Thus, "raising a claim of insufficiency of the evidence assumes a 'daunting burden.' " (*Whiteley v. Philip Morris, Inc.* (2004) 117 Cal.App.4th 635, 678).

Breach occurs when the defendant's conduct falls below the standard of care. (*Merrill v. Navegar, Inc.* (2001) 26 Cal.4th 465, 500.) As articulated above, the standard of care involved securing the club's unisex restroom with a security guard during open hours. Testimony at trial established that there was no security guard in the restroom when Plaintiff entered, although security guards were posted in the restroom earlier in the night. Thus, substantial evidence supports breach.

Here Lounge's argument to the contrary rests on a supposed lack of evidence establishing the foreseeability of sexual assaults in the restrooms. This argument fails because it does not address breach, but rather goes to duty. As explained above, sexual assaults in the restrooms were reasonably foreseeable.

11

### 3.  Substantial Evidence Supports Causation

Here Lounge contends there is no proof of any causal connection between its failure to post a security guard in the restroom area and Plaintiff's rape.  As with breach, we apply a substantial evidence standard of review to determine whether there was insufficient evidence of causation.  (*Wilson, supra,* 169 Cal.App.4th at p. 1188.) Causation exists where "the defendant's breach of its duty to exercise ordinary care was a substantial factor in bringing about plaintiff's harm."  (*Ortega v. Kmart Corp.* (2001) 26 Cal.4th 1200, 1205.)  "In other words, plaintiff must show some substantial link or nexus between omission and injury."  (*Saelzler v. Advanced Group 400* (2001) 25 Cal.4th 763, 778 (*Saelzler*).)

We conclude that substantial evidence supports the jury's finding of causation. Based on the evidence presented, it was reasonable to conclude that had a security guard been present in the restroom area when Plaintiff entered, the assault and rape would not have occurred.  There was no dispute that security guards stationed in the restroom had a clear view of the ADA stalls and would have seen Victor follow Plaintiff into the bathroom stall.  The security guards all testified that if someone followed a patron into a single restroom, the guards would intervene.

Here Lounge nevertheless asserts that despite its policy against more than one person in a single stall, "[t]here was no evidence . . . that the presence of a security guard would have made a difference in this case."  Here Lounge first argues that Plaintiff admitted Victor Cruz did not enter the restroom the same time she did.  However, the record does not support this conclusion.  Plaintiff testified that she entered the stall and when she turned around to sit down, she looked up and saw somebody standing in the stall with her.  Plaintiff testified that Victor entered the stall immediately after she did and she did not see him until she turned around.  Moreover, even if he entered the stall a few minutes later, the jury could have reasonably inferred that the guards would have intervened based on testimony that they kept an eye on patrons who neglected to lock stall doors.

12

Here Lounge's argument that it is "mere speculation" that a guard posted in the restroom area could have prevented the assault is equally unpersuasive. "[I]n a given case, direct or circumstantial evidence may show the assailant took advantage of the defendant's lapse (such as a failure to keep a security gate in repair) in the course of committing his attack, and that the omission was a substantial factor in causing the injury." (*Saelzler, supra,* 25 Cal.4th at p. 779.) Testimony from the security guards established that if they saw more than one person enter a restroom, they intervened. The head of security also testified that a guard should have prevented the co-occupation of stalls on the two other occasions that night caught on videotape. There was testimony at trial that patrons often forgot to lock the stall doors because they were intoxicated or careless and the guards kept an eye on unlocked doors. There was even testimony that patrons waited until the roaming guard passed through the restroom to sneak into a stall. Therefore, the jury could reasonably infer that a guard would have taken action to prevent Victor from entering the stall. Evidence about the club's employment practices also supported an inference that the presence of a guard would have deterred Victor's conduct. Here Lounge's owner testified there was a rule against employees having sexual contact with patrons and breaking that rule would result in termination.

The Court of Appeal's analysis regarding reasonable inferences in *Mukthar v. Latin American Security Service* (2006) 139 Cal.App.4th 284 (*Mukthar*) supports this conclusion. In *Mukthar,* a convenience store employee blocked the store's exit in an attempt to stop three people from shoplifting; the shoplifters then attacked him. (*Id.* at pp. 286-287.) Although the store had hired a security service to guard the store exit, a guard was not present at the time of the incident. The store employee sued the security service for negligence. (*Id.* at p. 287.) The security service moved for summary judgment, and argued that the store employee could not show that security service's negligence in failing to guard the door caused the assault. (*Id.* at p. 286.) The Court of Appeal reversed the trial court's decision granting summary judgment. (*Ibid.*)

13

The appellate court focused on whether there was evidence the assault would not have occurred if a guard were present. (*Mukthar, supra,* 139 Cal.App.4th at p. 291.) The appellate court concluded that it was "more likely than not" that the shoplifter would not have struck the employee if an armed guard had been standing next to the doorway. (*Ibid.*) Accordingly, the appellate court stated that it would not be conjecture for a trier of fact to find that the security guard could have prevented the assault, because a reasonable inference could be drawn from the evidence. (*Ibid.*)

As in *Mukthar*, the trier of fact in the instant case could reasonably infer that the presence of a security guard in the restroom area would have deterred Victor's sexual assault, particularly because the security guards worked with Victor, knew who he was, and were aware of the policies against sexual contact with patrons. Like the *Mukthar* court, we are not concluding that this inference is necessarily correct. As in *Mukthar,* we conclude that the jury could reasonably infer such a finding based on the evidence presented.

We therefore conclude substantial evidence supports the jury's finding that Here Lounge's negligence was a substantial factor causing plaintiff's harm.

**4. Admission of Testimony Regarding Mario's Prior Sexual Misconduct in the Workplace Was Not Error**

Here Lounge argues that the judgment should be reversed because the trial court erred in admitting evidence about Victor's brother, Mario Cruz. "Trial court rulings on the admissibility of evidence, whether in limine or during trial, are generally reviewed for abuse of discretion." (*Pannu v. Land Rover North America, Inc.* (2011) 191 Cal.App.4th 1298, 1317 (*Pannu*).) If the court erred in admitting the evidence, we would reverse the judgment only if Here Lounge demonstrates a miscarriage of justice, meaning that it could have achieved a more favorable result at trial had the evidence been excluded. (*Ibid.*)

The evidence at issue is testimony that Fiesta Cantina, a neighboring bar, terminated Mario for having sex with a woman in the bar's bathroom. Jude Tade, the Fiesta Cantina manager who fired Mario, went to work as a manager for Here Lounge

14

and hired Mario to work as a Here Lounge busboy despite his history. Tade later hired Victor and assigned Mario to train Victor how to do his job and how to appropriately interact with customers.

In a motion in limine, Here Lounge sought to exclude this evidence as irrelevant and improper character evidence. Mindful that Plaintiff was still pursuing a negligent hiring theory of liability, the court admitted the evidence as "relevant to both [the] hiring practice of defendant as well as their perhaps culture or laxity in the enforcement of their policies against having sex in the bathroom." The trial court offered to give a limiting instruction but Here Lounge never asked for one.

Here Lounge nevertheless argues the court erred in admitting Mario's prior misconduct, citing Evidence Code section 1101, subdivision (a). That statute states: "evidence of a person's character or a trait of his or her character (whether in the form of an opinion, evidence of reputation, or evidence of specific instances of his or her conduct) is inadmissible when offered to prove his or her conduct on a specified occasion." (Evid. Code, § 1101, subd. (a).) While, section 1101 would prohibit Plaintiff from introducing evidence of specific instances of Victor's misconduct to prove that Victor raped Plaintiff, it does not apply to evidence of Mario's misconduct.

Here Lounge also contends that the testimony was unduly prejudicial under Evidence Code section 352 and that it confused the issues and misled the jury. However, the jury could reasonably infer that Victor knew why his brother was terminated at Fiesta Cantina and that Victor had reason to view Mario's rehiring as condoning such conduct. As the trial court pointed out, the evidence speaks to Here Lounge's laxity in enforcing policies for preventing sexual activity on its premises. The evidence was thus probative of Here Lounge's liability as to both the negligent hiring and the premises liability causes of action. We therefore conclude the admission of this evidence was not an abuse of discretion.

Here Lounge complains that without a limiting instruction "the jury could infer . . . that Victor suffered from the same character defects [as Mario] and would behave similarly. The jury could also infer that Here Lounge should have known this

15

when it hired Victor." The problem is that Here Lounge never requested a limiting instruction even though the court invited one. "Absent a request, the trial court was not required to give instructions limiting the purpose for which the jury could consider the evidence." (*People v. Murtishaw* (2011) 51 Cal.4th 574, 590; Evid. Code, § 355.) Here Lounge's failure to ask for the limiting instruction forfeited this argument on appeal. (*Stathos v. Lemich* (1963) 213 Cal.App.2d 52, 57.)

We conclude that the trial court did not abuse its discretion in admitting the evidence because it was relevant to Here Lounge's hiring and supervision practices.

## 5. Admission of Victor's Videotaped Interview Was Not Error

Here Lounge moved in limine to exclude Victor's videotaped police interview on the ground that it was hearsay, inherently unreliable, and prejudicial. Here Lounge argued that Plaintiff's real purpose was to have the jury infer that Victor sexually assaulted her.

In the interview, Victor told the police detective a story about how he refused a woman who propositioned him for sex that night because she was drunk and unattractive. Victor explained that after he refused, the woman followed him into the male ADA stall. Inside the stall, she tried to unbuckle his pants, and then lay down on the floor, pulled up her skirt, and asked him to have sex with her. Victor said he refused because she was bleeding. He told police that he left the stall and never touched the woman. When the detective confronted him with information that his DNA was found on the woman's dress, Victor stated he didn't know why it was on her dress, admitted he was drunk that night, and suggested he might have masturbated on the woman.

The court denied Here Lounge's motion in limine on this issue, concluding that the videotape was not hearsay because it was not offered for its truth, but rather to show Victor's state of mind to prove consciousness of guilt. The court gave the jury a limiting instruction that the jury: "cannot use the statements made during the interview to show that any of the facts remembered or believed actually occurred." We review the trial court's ruling for an abuse of discretion. (*Pannu, supra,* 191 Cal.App.4th at p. 1317.)

" 'Hearsay evidence' is evidence of a statement that was made other than by a witness while testifying at the hearing and that is offered to prove the truth of the matter stated." (Evid. Code, § 1200.) Plaintiff did not offer Victor's videotaped statements for their truth, as Plaintiff's theory of the case was that Victor had followed, attacked, and forcibly raped her. Thus, the statements are not hearsay and the court did not abuse its discretion in admitting them.

**6.     The Noneconomic Damages Award Does Not Shock the Conscience**

Here Lounge argues that "a dearth of evidence [supports] the jury's enormous $5.35 million noneconomic damage award, consisting of $1.25 million in past noneconomic damages and $4.1 million in future noneconomic damages." "The amount of damages is a fact question, first committed to the discretion of the jury and next to the discretion of the trial judge on a motion for new trial. They see and hear the witnesses and frequently, as in this case, see the injury and the impairment that has resulted therefrom. . . . The power of the appellate court differs materially from that of the trial court in passing on this question." (*Seffert v. Los Angeles Transit Lines* (1961) 56 Cal.2d 498, 506–507 (*Seffert*).) Thus, we "review the jury's award under the substantial evidence standard and defer to the trial court's denial of a new trial motion based on excessive damages because of the trial judge's greater familiarity with the case." (*Mendoza v. City of West Covina* (2012) 206 Cal.App.4th 702, 720.) We can interfere "only on the ground that the verdict is so large that, at first blush, it shocks the conscience and suggests passion, prejudice or corruption on the part of the jury." (*Seffert,* at p. 507.)

In reviewing a noneconomic damage award, "[t]here are no fixed or absolute standards by which an appellate court can measure in monetary terms the extent of the damages suffered by a plaintiff as a result of the wrongful act of the defendant. The duty of an appellate court is to uphold the jury and trial judge whenever possible. [Citation.] The amount to be awarded is 'a matter on which there legitimately may be a wide difference of opinion' [citation]. In considering the contention that the damages are excessive the appellate court must determine every conflict in the evidence in respondent's favor, and must give him the benefit of every inference reasonably to be

17

drawn from the record [citation]. [¶] . . . Injuries are seldom identical and the amount of pain and suffering involved in similar physical injuries varies widely. These factors must be considered. [Citation.] Basically, the question that should be decided by the appellate courts is whether or not the verdict is so out of line with reason that it shocks the conscience and necessarily implies that the verdict must have been the result of passion and prejudice." (*Seffert, supra,* 56 Cal.2d at p. 508.)

The jury heard evidence that the rape was violent, traumatic, and caused Plaintiff to lose her virginity. Plaintiff was further humiliated and embarrassed at the rape treatment center, where she had to remove her clothing, put on a gown, and lie on a table for a two-hour videotaped vaginal examination while still in pain. The exam made Plaintiff feel "gross." The examining nurse, who had conducted over 1,000 rape exams, testified that Plaintiff's hymen was significantly torn by the "violent" penetration, and calibrated the severity of her injury as an eight on a scale of one to ten. Plaintiff told the jury she tries to get past what happened to her but it continues to haunt her. Plaintiff has had such difficulty coming to terms with the rape, that she has been unable to discuss it with her mother or her closest friends. She rarely uses public restrooms because of the incident, and she is more frightened for her safety than ever before, even after relocating to a more secure apartment facility.

Plaintiff's expert psychologist testified that the rape caused psychological trauma. Three years after the incident, Plaintiff continued to think about the sexual assault and to have nightmares about it. She also avoided discussing the incident because it was too upsetting. Plaintiff suffered significant distress, including feelings of disbelief, shock, horror, disgust, and upset. The unfortunate experience still simply overwhelms her. The psychologist diagnosed Plaintiff with severe Post Traumatic Stress Disorder. The psychologist's testing confirmed Plaintiff developed severe and extreme sensitivity and suspiciousness of others. The expert opined that even assuming Plaintiff received the necessary therapy, she will never return to the position she was in before suffering the rape.

The defense expert psychiatrist agreed that the rape was very upsetting and traumatic for Plaintiff. Plaintiff told him that her social life did not feel the same since the incident, and that she still had crying spells and emotional distress. The defense expert predicted Plaintiff will experience fear, anxiety, humiliation, and embarrassment for the rest of her life. Given this substantial evidence regarding Plaintiff's extensive emotional distress, we cannot say the jury's large award of noneconomic damages shocks the conscience.

Here Lounge asserts that the jury's large award was influenced by impermissible "golden rule" arguments in closing argument. A "golden rule" argument tells the jury "to place themselves in the plaintiff's shoes and award the amount they would 'charge' to undergo equivalent disability, pain and suffering." (*Nishihama v. City and County of San Francisco* (2001) 93 Cal.App.4th 298, 305.) That argument is improper because it asks the jury to place themselves or their loved ones in Plaintiff's position, effectively urging them to become advocates for Plaintiff. (*Horn v. Atchison T. & S. F. Ry. Co.* (1964) 61 Cal.2d 602, 609 (*Horn*).) We see no evidence of such an argument here. The record shows that Plaintiff's counsel told the jury that the security you expect at a public place varies depending on the environment, and urged the jury to: "[d]iscuss the manner in which you can look at somebody who has been very seriously hurt, very seriously emotionally damaged and having to deal with something over a period of time and how you can grapple with it." Neither comment asked the jurors to become advocates for Plaintiff by placing themselves in her position or invited them to denigrate their oath to decide the issues based on the evidence.

Here Lounge also argues that the jury's "excessive" award was caused by Plaintiff's counsel's inflammatory rhetoric and statements unsupported by evidence. Here Lounge specifically identifies the following comments in closing argument as improper: "Victor Cruz is a sexual predator," Here Lounge "allowed a sexual predator to exist and have free reign of the women within the club," Here Lounge "[doesn't] get a free rape," and Here Lounge's experts were "pay-to-say witnesses."

However, Here Lounge only objected to the statement, "Victor Cruz is a sexual predator." This statement was a permissible comment based on evidence adduced at trial that Victor followed Plaintiff into the stall and forcibly raped her. (*McCullough v. Langer* (1937) 23 Cal.App.2d 510, 522 ["[I]t is the privilege of an attorney to draw any inference with respect to the facts or the credibility of witnesses of which the evidence is reasonably susceptible."].)

As to the remaining statements, Here Lounge failed to object and is deemed to have forfeited the objections. "Generally a claim of misconduct is entitled to no consideration on appeal unless the record shows a timely and proper objection and a request that the jury be admonished. [Citations.] The purpose of the rule requiring the making of timely objections is remedial in nature, and seeks to give the court the opportunity to admonish the jury, instruct counsel and forestall the accumulation of prejudice by repeating improprieties, thus avoiding the necessity of a retrial. 'It is only in extreme cases that the court, when acting promptly and speaking clearly and directly on the subject, cannot, by instructing the jury to disregard such matters, correct the impropriety of the act of counsel and remove any effect his conduct or remarks would otherwise have.' [Citation.] In the absence of a timely objection the offended party is deemed to have waived the claim of error through his participation in the atmosphere which produced the claim of prejudice." (*Horn, supra,* 61 Cal.2d at p. 610.)

Based on the foregoing, we affirm the award of noneconomic damages.

**DISPOSITION**

The judgment is affirmed on all grounds.  Plaintiff Janice H. is awarded her costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

HOGUE, J.[*]

I concur:

EDMON, P. J.

ALDRICH, J.

---

[*]     Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.