Filed 7/26/21  Kristina B. v. Fisher CA2/2

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| KRISTINA B., | B304878 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. 18STCV09736) |
| v. | |
| NOEL FISHER, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Dennis J. Landin, Judge.  Affirmed.

Noel Fisher, in pro. per., for Defendant and Appellant.

Venable, William J. Briggs II, Matthew M. Gurvitz and Bryan J. Weintrop for Plaintiff and Respondent.

Respondent Kristina B. brought an action against appellant Noel Fisher, an established music producer and songwriter, on December 27, 2018, for assault and battery, sexual battery, sexual harassment, gender violence, and infliction of emotional distress. These torts were alleged to have occurred between January 2017 and May 2018. After attempts at personal service were unsuccessful, the court issued an order for service by publication on May 10, 2019. Appellant's default was entered on July 24, 2019. The court entered judgment for $15,130,906.74 on September 24, 2019.

Appellant, in propria persona, filed a motion to set aside the default judgment on October 30, 2019. This motion was denied on January 9, 2020, without prejudice, the court noting that counsel who had appeared at the hearing for appellant intended to file a new motion to set aside the default.

A second motion to set aside the default was filed by appellant's counsel on January 23, 2020. This motion was also denied. A timely appeal followed. We affirm.

### I. A restraining order and the reaction thereto

A temporary restraining order naming appellant as the restrained person and respondent as the protected person was issued on May 8, 2018.

This event was significant for three reasons. First, it marked the end of the relationship between respondent and appellant that had begun in December 2016. Second, it spelled the beginning of appellant's troubles with the music recording industry. Third, it resulted in appellant being evicted from his residence in Santa Clarita and caused him to leave California for a while. This impacted on attempts to serve him with process when respondent's complaint was filed.

2

Appellant has admitted that this restraining order, and another restraining order obtained by another individual with claims similar to respondent's, damaged his career and business to the point that "[r]ecord labels and artists stopped working with me after the allegations surfaced in May 2018." Appellant acknowledged in his declaration supporting the motion to set aside the default that he "did leave Los Angeles for certain periods of time to get away from all the chatter concerning the allegations [of the requests for restraining orders]." In another declaration appellant stated he was away from Los Angeles in May and June 2018.

## II.  The complaint

The complaint, filed on December 27, 2018, alleges that respondent had a burgeoning career as a model when she met appellant who, as a well known musical producer and artist, promised musical stardom for her with him as the guiding light of that career. Although appellant raped respondent on a joint trip to Miami, respondent managed to begin recording under a production deal generated by appellant. Nonetheless, the sexual, emotional, and physical abuse continued from January 2017 to May 2018, with six more rapes and a great deal of emotional and physical abuse, with respondent increasingly dependent on appellant for the basic necessities of life. This continued until respondent's sister appeared on the scene in May 2018 and took charge, taking respondent first to the hospital and then to the police to report the rapes and abuse.

The complaint sought damages in an unspecified amount, statutory damages under Civil Code section 52 (denial of civil rights or discrimination; damages), and punitive damages in an unspecified amount.

### III. Attempts at service of the complaint

The complaint made the news immediately. On December 28, 2018, Billboard Web site (Billboard*)* published a lengthy article. (Kaufman*, Aspiring Singer Files Sexual Assault Lawsuit Against Hip-Hop Producer Noel 'Detail' Fisher* (Dec. 28, 2018) Billboard.com <https://www.billboard.com/articles/news/8491702/detail-producer-aspiring-singer-files-sexual-assault-lawsuit> [as of July 26, 2021], archived at <https://perma.cc/WR4Y-DH6G>.) Digital Music News followed suit with a like article on December 31, 2018. (Sanchez*, Noel 'Detail' Fisher's Alleged Sexual and Emotional Abuse Detailed* (Dec. 31, 2018) DigitalMusicNews.com <https://www.digitalmusicnews.com/2018/12/31/noel-detail-fisher-sexual-assault-detailed/#comments> [as of July 26, 2021], archived at <https://perma.cc/FCA2-ENAN>.) Respondent submitted the results of a "Google" search in December 2019 that reported links to these and other articles about respondent's lawsuit against appellant.

Randall R. Petee, a private investigator retained by respondent's attorney, had successfully personally served appellant at his residence with the restraining order on June 9, 2018.

Petee attempted to serve appellant with the complaint at his residence on December 28, 2018, but found that appellant had moved away. Petee thereafter located where appellant's brother was living but was unable to make contact with him or appellant. Petee then searched data bases for property records in Southern California counties but was unable to find any information about appellant. Petee searched Internet and social media sites, learned that appellant had been in Los Angeles County on

various occasions, but was unable to obtain an address or any information about appellant's whereabouts. Appellant had not left a forwarding address with the United States Postal Service. Petee was unable to effect personal service on appellant.

As noted, an order for publication was issued on May 10, 2019.

## IV. Respondent's showing regarding damages

Respondent requested the entry of default and default judgment on July 24, 2019.

As part of her submissions in support of the request, respondent detailed the damages that she was seeking.

Respondent sought $2.5 million for pain and suffering and $2.5 million for emotional distress damages. In support of these claims, respondent contended that appellant's "violent rapes and beatings placed [her] in a state of constant fear, further magnified by Fisher's constant threats and aggressive tirades." Respondent states that she has been diagnosed with posttraumatic stress disorder, anxiety, and depression. Among other like cases, respondent cited *Janice H. v. 696 North Robertson, LLC* (2016) 1 Cal.App.5th 586, where the jury returned verdicts of $1.25 million for past noneconomic loss and $4.1 million in future noneconomic loss for a rape that lasted five minutes. (*Id.* at pp. 591–592.) The Court of Appeal rejected the contention that this award was excessive. (*Id.* at pp. 601–604.)

Respondent also sought special damages for past and future therapy, respectively $36,835 and $90,825. She attended an intensive rehabilitation program for five weeks in 2018 at a cost of $33,160. She states that appellant's "horrific behavior has shattered [her] world and [she] anticipates attending therapy for the foreseeable future." She asked for therapy expenses for the

5

next 14 years at $150 per session or an average of $525 per month.  She asked for $2,520.51 in interest for past medical expenses.

After stating the familiar jurisprudence governing punitive damage awards, respondent sought $10 million in exemplary damages.  She noted the case law that single-digit multipliers are likely to comport with due process.  (*Bullock v. Philip Morris USA, Inc.* (2011) 198 Cal.App.4th 543, 563.)  Since appellant's default foreclosed discovery as to his net worth, respondent submitted that appellant has a high earning potential from royalties of 163 songs registered with Broadcast Music, with some songs rendered by Beyoncé that were on Billboard's Hot 100 Chart for 20 weeks, one of them topping out at No. 2.

### V.  The judgment and the assignment order

As noted, judgment for $15,130,906.74 was entered on September 24, 2019.

On October 10, 2019, the court entered an order assigning to respondent all of appellant's interests in copyrights, royalties, commissions, and other revenue from Sony/ATV Music Publishing, Broadcast Music, Sound Exchange, Universal Music Group, Detail Music, Joseph Trail, Ooh Trae, John R. Road, and Boonk Gang until such time as the judgment is fully satisfied. The order restrains appellant and his agents from diverting the aforesaid interests except as necessary to satisfy the judgment.

Predictably, this order drew the first sign of life from appellant[1] by way of the motion to set aside the default, which he filed in propria persona on October 30, 2019.

---

[1] Respondent states that appellant did not appear for the hearing on the restraining order.

### VI. The first motion to set aside the default

The motion to set aside the default filed in propria persona by appellant was a handwritten document consisting of two pages. The sole ground asserted in the motion was that "[b]ased on [California Rules of Court,] Rule 473.58 Service of Summons did not give Actual Notice in time to defend." Respondent filed an opposition to the motion. The reply to the opposition was also filed in propria persona but it appears to have been prepared by the lawyer who eventually represented appellant in the second motion to set aside the default.

The reply was supported by a declaration by appellant under penalty of perjury. In that declaration, appellant denied having avoided service and stated that he had been "homeless and couch surfing for a period of time" after he had been evicted from his home. He stated that he learned about the complaint only in October 2019 when a friend told him that he had read about the $15 million judgment in a magazine. The reply simply repeated the averments of appellant's declaration.

Prior to the hearing on this motion, respondent filed a request that the court take judicial notice of the declaration under penalty of perjury by appellant filed in another case, *Janae Knox v. Noel Fisher et al.* (Super. Ct. L.A. County, 2020, No. BC710221) (hereafter the Knox declaration).

In the Knox declaration appellant states that he had three Grammy Award nominations and had won that award once. Appellant goes on to state that two restraining orders that were issued in May 2018 (one of them being respondent's) were picked up by the press (e.g., TMZ and Rolling Stone) and widely disseminated, which effectively ruined his career. He confessed he did not know "how to handle the situation so I ran. I left Los

7

Angeles area sometime between May and June 2018." "Beginning in June 2018 and continuing throughout 2018, I was homeless and sleeping either behind a warehouse in the Castaic Lake area or on a couch in the living room of any one who would let me in."

Attorney Muammar Reed appeared for appellant at the hearing of the motion to set aside the default. The motion was denied without prejudice. The minute order states that "[d]efense counsel states he wishes to proceed with a new Motion to Set Aside/Vacate Default. Counsel is directed to reserve the first available date on the Court's reservation system then contact the staff of Department 51 to advance it." Notice of the ruling was served on January 9, 2020.

## VII.  The second motion to set aside the default

This motion was prepared by Attorney Reed and it was filed on January 23, 2020. The motion relied on Code of Civil Procedure sections 473.5 (motion to set aside default) and 473, subdivision (b) (relief from order due to mistake, inadvertence or excusable neglect). However, this motion did not add anything new that was of any consequence.

Noting that appellant had been evicted from his home in "early to mid-2018," the motion contended, as had the reply to the first motion, that appellant had been homeless during the time efforts were made to serve the complaint. The motion denied that appellant had been avoiding services and stated that appellant did not know of the filing of the complaint. Appellant's declaration in support of this motion repeated his earlier disclaimers and went on to state: "I did not read any articles or publications about me that were written after the lawsuit was

8

filed on December 27, [2018] or before learning of the default judgment sometime in October 2019."

In denying this motion, the court found that the second motion, as a motion for reconsideration, was not timely in that it was not filed within 10 days of notice of entry of the denial order. The court then noted that all of the facts set forth in the second motion appear to have been known to appellant at the time he filed the first motion, meaning that nothing new had been presented in the second motion. The court closed by finding that there was "convincing circumstantial evidence that [appellant] willfully evaded service of the complaint and that he did have actual knowledge of the action in time to defend against it."

## DISCUSSION

### I. WE DEEM THE SECOND MOTION TO BE TIMELY

The record is ambiguous on whether leave was given for the filing of a second motion to set aside the default. It is possible to interpret the court's minute order of January 9, 2020, as giving newly retained counsel, who appeared for appellant in the hearing on the first motion, leave to file a second motion without regard to the first motion, which had been filed in propria persona by appellant. Giving appellant and his counsel the benefit of a doubt, we deem the second motion to have been timely and filed with leave of court and not subject to the 10-day limitation on motions for reconsideration.

### II. PUBLICATION IN THE LOS ANGELES DAILY JOURNAL WAS LEGALLY EFFECTIVE

Appellant contends that publication in the Los Angeles Daily Journal (June 12, 2019) was not likely to give him actual notice. Appellant claims that Variety or Billboard are of wider

9

circulation than the Los Angeles Daily Journal and would have been more apt to give him actual notice.

The statutory standard for publication is a newspaper published in this state "that is most likely to give actual notice to the party to be served." (Code Civ. Proc., § 415.50, subd. (b).) The Los Angeles Daily Journal has been held to be newspaper that meets this standard. (*Giorgio v. Synergy Management Group, LLC* (2014) 231 Cal.App.4th 241, 245, 249.) We see no reason to revise this conclusion. Appellant is a sophisticated businessman, in addition to being a recording artist, who understands the function of legal newspapers like the Los Angeles Daily Journal. It is not the circulation alone that is determinative. The specialization and function of a legal newspaper like the Los Angeles Daily Journal is, among other things, to publish legal notices, which makes it the proper vehicle for publication of service.

It is interesting that appellant touts Billboard as superior to the Los Angeles Daily Journal. As we have noted, Billboard was one of the publications that ran a story on respondent's action the day after it was filed. With appellant's interests and ties to the music world, the story was difficult to miss.

Appellant also faults respondent for not mailing him a copy of the summons and complaint. Appellant is right that this must be done but only if the "address is ascertained before expiration of the time prescribed for publication of the summons." (Code Civ. Proc., § 415.50, subd. (b).) The problem was that appellant disappeared after respondent's complaint was filed, leaving no forwarding address with anyone, including the United States Postal Service.

## III. THE PUBLICATION INCLUDED A SEPARATE STATEMENT OF DAMAGES

Appellant contends that when service is effected by publication, a separate statement of damages must be published in the same manner as service of summons.  Appellant is right.  (Code Civ. Proc., § 425.11, subd. (d)(1).)  Appellant appears to be unaware of the fact that that is exactly what was done in this case.

Appellant also states that the amount of exemplary damages should not be alleged in a complaint.  As before, appellant seems to have missed that respondent's complaint did not allege the amount of punitive damages sought.

After these two false starts, appellant sandwiched into the text of this argument about the publication of statements of damages the argument that the $10 million awarded as punitive damages was excessive and not supported by the evidence.

There are two reasons why we disregard this argument.  First, appellant's procedural rights were cut off by the entry of the default, which means that appellant cannot contest the merits of the case, which includes contesting the amount of punitive damages awarded.  (See *Steven M. Garber & Associates v. Eskandarian* (2007) 150 Cal.App.4th 813, 823.)  Second, a judgment by default operates as an admission of matters well pleaded in the complaint.  (*Brown v. Brown* (1915) 170 Cal. 1, 5.)  This means that respondent's entitlement or punitive damages is no longer an open issue.  It is also true that the manner in which appellant made this argument violates the California Rules of Court, rule 8.204 (a)(1)(B), which requires each argument to be stated under a separate heading.  The claim that the punitive

11

damages awarded were excessive should have been stated under its own heading.

While we disregard appellant's argument, we note the principle that single-digit ratios between compensatory and exemplary damages are preferred in determining whether the punitive damages have a reasonable relationship to compensatory damages. (See *Bullock v. Philip Morris USA, Inc., supra*, 198 Cal.App.4th at pp. 563, 565.) A multiplier of two is in the low single digits.

## IV. THE COURT DID NOT ERR IN REQUIRING APPELLANT TO PRODUCE EVIDENCE THAT HE WAS UNAWARE OF THE FILING OF THE COMPLAINT

Appellant contends that the court improperly imposed on him the burden of proving that he was unaware of the filing of the complaint.

Since it was appellant who filed the motion to set aside the default, it was appellant who had the burden of producing evidence to support the motion. (Evid. Code. § 110.)[2] This was not the burden of proof.[3] "The burden of producing evidence as to a particular fact is on the party against whom a finding on that fact would be required in the absence of further evidence." (Evid. Code, § 550, subd. (a).) Unless appellant produced

---

[2] " 'Burden of producing evidence' means the obligation of a party to introduce evidence sufficient to avoid a ruling against him on the issue." (Evid. Code, § 110.)

[3] " 'Burden of proof' means the obligation of a party to establish by evidence a requisite degree of belief concerning a fact in the mind of the trier of fact or the court." (Evid. Code, § 115.)

12

evidence that he did not know about the filing of the complaint, an adverse finding on that fact would have been required. Thus, he had the burden of producing evidence on that issue.

## V. THERE WAS SUBSTANTIAL EVIDENCE THAT APPELLANT WILLFULLY EVADED SERVICE

The trial court ruled that there was circumstantial evidence that appellant willfully evaded service of the complaint and that he had actual knowledge of the action in time to defend against it.

We agree with this finding. Respondent's complaint received immediate and widespread publicity in publications with which appellant was without doubt very familiar. (His express denial that he read about the complaint in these publications is not credible.) In any event, the most convincing indication that appellant was well aware of the complaint is that he completely disappeared from the scene after December 2018. Given his wide-ranging presence in the recording industry, it must have taken considerable effort on his part during the first months of 2019 to obliterate all signs of his presence in Los Angeles. Until the order of publication issued in May 2019, the process server was unable to find any trace of a residence, although he did detect signs that appellant was, at least from time to time, present in this city.

## DISPOSITION

The order is affirmed.  Respondent is to recover her costs on appeal.

**NOT TO BE PUBLISHED.**


LUI, P. J.

We concur:


CHAVEZ, J.


HOFFSTADT, J.