[No. B183968. Second Dist., Div. Eight. May 8, 2006.]

TOFIK MUKTHAR, Plaintiff and Appellant, v.
LATIN AMERICAN SECURITY SERVICE, Defendant and Respondent.

## COUNSEL

Murray M. Sinclair & Associates, Murray M. Sinclair; Law Offices of Michael A. Cholodenko and Michael A. Cholodenko for Plaintiff and Appellant.

Murphy, Pearson, Bradley & Feeney, Peter J. Zomber, Anne L. Thompson and David J. Ozeran for Defendant and Respondent.

## OPINION

**FLIER, J.**—Appellant Tofik Mukthar, a cashier at a 7-Eleven store, brought an action against respondent Latin American Security Service, Inc. (Service), for its alleged failure to prevent an attack on Mukthar by a patron. Service brought a motion for summary judgment, which the trial court granted on the ground that Mukthar could not show that Service's negligence was the cause of the assault. We conclude that it is a question of fact whether Mukthar's injuries were caused by Service's negligence. Accordingly, we reverse the judgment.

### FACTS

Mukthar was working at the 7-Eleven store on Martin Luther King Boulevard on December 6, 2003, when, at approximately 9:30 p.m., two females and a boy entered the store.[1] Mukthar was aware of the fact that, at this time, there was no security in the store. Mukthar told the women that the boy couldn't come in because the boy was a shoplifter, i.e., "he steals"; the boy had been told on previous occasions not to come into the store.

The women started violently swearing at Mukthar, using obscenities, over his decision to eject the boy from the store. When the women came to the counter with some merchandise, Mukthar refused them service because they were swearing at him. Mukthar pushed the security button behind the cash register. The women went back to the shelves, grabbed three items, and

---

[1] The facts are undisputed, unless otherwise noted.

started walking out. As they were walking toward the door, they said: "You m-----f-----. If you want to get these, come get them." Mukthar came out from behind the register, went to the front door, blocked the exit, and told them to put the merchandise back. The women and the boy rushed at Mukthar; one of the women hit him in the eye with her hand. Mukthar's complaint alleges that, as a result of this assault, he is on total, but temporary, disability.

Prior to this incident, Mukthar's superior, Sundeep Bhatia,[2] hired Service to provide security in the store. Under its contract, Service was required to provide armed, uniformed security guards daily between 9:00 p.m. and 5:00 a.m. However, the guard was not on duty when this incident occurred. No reason is given by either party why there was no security guard on the premises when the assault on Mukthar took place, nor does Service contest that a guard should have been on the premises under the terms of its contract with the store.

Service disputes Mukthar's claim that there was a high incidence of shoplifting in the store, but admits that Mukthar saw some of his coemployees being beaten up at the store. Service admits that Bhatia retained Service because his employees feared for their safety.

Clint Gomez, the guard assigned to Bhatia's store, understood that shoplifting was a problem at the store; Gomez was usually stationed a foot away from the entrance to the store, and a few feet away from the cash register. Gomez testified at his deposition that, when on duty at the store, he was armed, wore a tan uniform, and was equipped with a baton, handcuffs and tear gas. In disputing these facts, Service states that Gomez's testimony is ambiguous on this issue, and that the referenced portion of Gomez's deposition is a description of the customers of the store. Service is correct that the page referenced in Mukthar's statement of undisputed fact, page 36, does not address how Gomez was equipped; however, the next page (37) clearly does that. The reference to page 36 is clearly a typographical error. We find Gomez's testimony to be clear and unambiguous.[3]

---

[2] We are advised that Sundeep Bhatia owns the store in question; Jose Lomas is the president of Service. Neither Lomas, Bhatia nor the store was ever named as a defendants.

[3] "Q. And when you worked there you were in uniform? [¶] A. Correct. [¶] Q. And when you worked there you were armed? [¶] A. Correct. [¶] Q. Did you also have any other equipment such as a baton or anything like that? [¶] A. Just a baton and tear gas. [¶] Q. So your uniform was typically equipped with a gun, baton and tear gas? [¶] A. Tear gas, hand cuffs and flashlight." The contract between Service and the store required the guard to be armed.

## DISCUSSION

### 1. *We Deem the Appeal to Have Been Taken from the Judgment*

The motion for summary judgment was heard on April 19, 2005, when the motion was taken under submission. The court granted the motion by a minute order entered on April 25, 2005. Mukthar filed a notice of appeal on June 20, 2005. The notice states that the appeal is taken from the trial court's "notice of entry of order in favor of defendant [Service], entered in the court's minutes by the county clerk on April 25, 2005." (Capitalization omitted.) A judgment was entered on July 14, 2005; thus, the notice of appeal was premature.

Service contends that the appeal should be dismissed, since an order granting summary judgment is not appealable. Service is correct. An order granting summary judgment is not an appealable order; the appeal is from the judgment. (*Levy v. Skywalker Sound* (2003) 108 Cal.App.4th 753, 761 [134 Cal.Rptr.2d 138].) However, when the order is followed by a judgment, the appellate court may deem the premature notice of appeal to have been filed after the entry of judgment. (*Zwicker v. Altamont Emergency Room Physicians Medical Group* (2002) 98 Cal.App.4th 26, 29, fn. 2 [118 Cal.Rptr.2d 912]; Cal. Rules of Court, rule 2(e)(2).) Counsel for appellant advises us in a sworn declaration that sometime after April 25, 2005, the proposed judgment was lost or misplaced. With the time running and uncertainty about whether there was a judgment on file, counsel correctly chose to file a notice of appeal in order to protect the right to appeal. With no judgment in hand, counsel could only refer in the notice of appeal to the order granting summary judgment. We conclude that, in light of these circumstances, the ends of justice are served if we deem the notice of appeal to have been filed after the entry of judgment. This is not one of those cases when counsel has ignored the rule that the appeal is from the judgment, and not the order granting the motion for summary judgment.[4]

### 2. *Under the Negligent Undertaking Doctrine, It Is a Question of Fact Whether Service Is Liable for Mukthar's Injuries*

The trial court reasoned that Mukthar "was the aggressor in the incident. He began the altercation by verbally addressing the women[5] and heightened

---

[4] See cases collected in Eisenberg et al., California Practice Guide: Civil Appeals and Writs (The Rutter Group 2005) paragraph 2:263, pages 2-120 to 2-121 (rev. #1 2005); e.g., *Cohen v. Equitable Life Assurance Society* (1987) 196 Cal.App.3d 669, 671 [242 Cal.Rptr. 84] (the court is "wearying of 'appeals' from clearly nonappealable orders" and court will not "bail out attorneys who ignore the statutory limitations on appealable orders").

[5] This appears to refer to Mukthar's statement that the boy could not come into the store.

it by refusing to allow them to purchase goods. In his declaration, plaintiff admitted he was angry and frustrated with the women. It is mere speculation to say he would not have placed himself near the door in an attempt to block the women's exit had the security guard been present. It is further conjecture [*sic*] to say a security guard could have prevented the attack on the [p]laintiff. 'How can one know what measures will protect against the thug, the narcotic addict, the degenerate, the psychopath and the psychotic?' (*Noble v. Los Angeles Dodgers, Inc.* (1985) 168 Cal.App.3d 912, 918 [214 Cal.Rptr. 395, 214 Cal.Rptr. 396].) No one can reasonably contend that an increase in police personnel will prevent all or any particular crime. (*Saelzler* [*v. Advanced Group 400* (2001)] 25 Cal.4th [763,] 777 [107 Cal.Rptr.2d 617, 23 P.3d 1143]. . . .) . . . [¶] . . . No evidence has been presented establishing that the security guard had any knowledge of the identity of the woman who hit the plaintiff. Even plaintiff has no idea of who she is. Even if the security guard had been at his station on the night in question, it is not reasonable to assume that he would have identified the woman as a possible shoplifter and then stopped her entrance, thus preventing the incident." We conclude that the trial court erred in its application of the negligent undertaking doctrine.

■ "Our cases establish that a volunteer who, having no initial duty to do so, undertakes to provide protective services to another, will be found to have a duty to exercise due care in the performance of that undertaking if one of two conditions is met: either (a) the volunteer's failure to exercise such care increases the risk of harm to the other person, or (b) the other person reasonably relies upon the volunteer's undertaking and suffers injury as a result." (*Delgado v. Trax Bar & Grill* (2005) 36 Cal.4th 224, 249 [30 Cal.Rptr.3d 145, 113 P.3d 1159], fn. omitted.) This is referred to as the negligent undertaking doctrine, or sometimes as the "Good Samaritan" rule. This doctrine is "firmly rooted" in the law of negligence.[6]

■ When the actor has undertaken to render services for the protection of a third person, the negligent undertaking doctrine may also apply. Our

---

[6] "Over 30 years ago, we described this negligent undertaking theory of liability—sometimes referred to as the 'Good Samaritan' rule—as '[f]irmly rooted in the common law [of negligence]' [citation] and cited section 324A [Rest.2d Torts] as one of the authorities establishing its controlling principles ([citation], citing numerous authorities). Indeed, '[i]t is ancient learning that one who assumes to act, even though gratuitously, may thereby become subject to a duty of acting carefully, if he acts at all.' [Citation.] As 'Dean Prosser says . . . , "[I]f the defendant enters upon an affirmative course of conduct affecting the interests of another, he is regarded as assuming a duty to act, and will thereafter be liable for negligent acts or omissions[.]" ' [Citation.] [¶] Thus, it is settled law that one 'who, having no initial duty to do so, undertakes to come to the aid of another—the "good samaritan" '—has 'a duty to exercise due care in performance and is liable if (a) his failure to exercise care increases the risk of such harm, or (b) the harm is suffered because of the other's reliance upon the undertaking.' " (*Artiglio v. Corning Inc.* (1998) 18 Cal.4th 604, 613 [76 Cal.Rptr.2d 479, 957 P.2d 1313].)

Supreme Court has formulated the rule in these cases, which is stated in section 324A of the Restatement Second of Torts,[7] in the following words: "As the traditional theory is articulated in the Restatement, a negligent undertaking claim of liability to third parties requires evidence that: (1) the actor [in this case, Service] undertook, gratuitously or for consideration, to render services to another [7-Eleven store]; (2) the services rendered were of a kind the actor should have recognized as necessary for the protection of third persons [store employees or Mukthar]; (3) the actor failed to exercise reasonable care in the performance of its undertaking; (4) the failure to exercise reasonable care resulted in physical harm to the third persons; and (5) either (a) the actor's carelessness increased the risk of such harm, or (b) the undertaking was to perform a duty owed by the other to the third persons, or (c) the harm was suffered because of the reliance of the other or the third persons upon the undertaking. [Citations.] Recovery on section 324A's negligent undertaking theory thus requires proof of each of the well-known elements of any negligence cause of action, viz., duty, breach of duty, proximate cause and damages." (*Artiglio v. Corning Inc., supra*, 18 Cal.4th at pp. 613–614.)

We begin with the fact that Service does not claim that there was a good reason why its guard was not on the premises when the assault on Mukthar took place. Nor does Service claim that its guard need not have been on the premises. Indeed, the contract requires the presence of an armed guard between the hours of 9:00 p.m. and 5:00 a.m., seven days a week, every week of the year. In sum, Service effectively concedes that its guard should have been, but was not, on the premises when Mukthar was assaulted. However, once Service had assumed the duty of providing a security guard, it was required to do so. Thus, the third element set forth in *Artiglio v. Corning Inc.* is present in this case, i.e., Service failed to exercise reasonable care in the performance of its undertaking.

In this connection, we reject Service's contention that it owed no duty to the store, or to Mukthar, because it had no "actual notice" that an assault was about to occur. The negligent undertaking doctrine is not predicated on notice of actual, impending harm.

For the purposes of the motion for summary judgment, there is no question that Mukthar's injuries were directly caused by the woman who struck him.

---

[7] Section 324A of the Restatement Second of Torts provides: "One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if [¶] (a) his failure to exercise reasonable care increases the risk of such harm, or [¶] (b) he has undertaken to perform a duty owed by the other to the third person, or [¶] (c) the harm is suffered because of reliance of the other or the third person upon the undertaking."

The nub of the matter, as far as Service's liability is concerned, is whether that assault would, or would not, have taken place if Gomez had been standing in his usual position, which was one foot away from the door, i.e., in very close proximity to Mukthar when he was struck. In other words, the focus in this case on the fourth element set forth in *Artiglio v. Corning Inc.*, i.e., whether Service's failure to exercise reasonable care resulted in physical harm to Mukthar.

We disagree with the trial court that it is *conjectural* whether a "security guard could have prevented the attack on the Plaintiff." The issue is whether it is a question of fact whether the woman would have struck Mukthar in the face, if an armed, uniformed security guard, equipped with a baton and handcuffs, would have stood next to Mukthar. (There is no dispute about the fact that the guard's station was at the door, where Mukthar was standing when he was struck.) We think the inferences are not evenly balanced on this issue. It is more likely than not that the woman would not have hit Mukthar in the face in the close proximity of an armed guard who had the ready means at hand to respond physically to violence. Be that as it may, it is not for us to decide this question of fact, which is consigned to the trier of fact.

We note that the harm that befell Mukthar was precisely the kind of harm that Service was there to prevent, i.e., an assault on a store employee. We also note that there is no support for the trial court's factual conclusion that Mukthar was the "aggressor in the incident." The parties agree that it is not disputed that at no time before being struck did Mukthar come in physical contact with the woman; at the door, he did not even touch the merchandise that she was trying to steal. Trying to eject the boy who was a known shoplifter is not an "aggressive," but a defensive, act; nor does this character-ization fit someone, like Mukthar, who is the target of obscene and abusive language and, finally, of a physical assault. Indeed, it appears that respondent also disagrees with this characterization when it notes in its brief that Mukthar was not "necessarily the 'aggressor,' as stated by the trial court."[8]

The cases on which the trial court, and Service, rely do not apply.

*Noble v. Los Angeles Dodgers, Inc., supra*, 168 Cal.App.3d 912 (*Noble*), was a case involving a plaintiff who was assaulted by two drunks in the parking lot after a baseball game. There were 69 security guards on duty, one for every 900 fans, but the plaintiff claimed that security was inadequate. (*Id.* at p. 917.) The court reversed because the plaintiff could not show that *additional* measures would have prevented the assault. (*Ibid.*)

Unlike *Noble*, this is a case where Service was to provide security, but completely failed to do so. That is, in this case the duty to provide security,

---

[8] Respondent's evenhanded approach is to be commended.

assumed by Service, was clearly breached. In *Noble*, the defendant provided 69 guards. Thus, while the plaintiff in *Noble* contended this was not adequate, the defendant did provide security; it was therefore far less clear than in the case at bar that the defendant breached its duty. More importantly, and also unlike *Noble*, in this case it is a question of fact whether the presence of an armed guard at the door, where Mukthar was assaulted, would have forestalled the assault, and/or that the guard would have been able to prevent the assault, if it had been attempted. Putting the same point differently, it is a reasonable inference that the presence of an armed guard in close proximity to Mukthar would have prevented the assault. Whether the trier of fact will actually draw that inference is not for us to say. In any event, in *Noble* the plaintiff could not show that it was a reasonable inference that *additional* security measures would have prevented the assault by two drunks.

*Saelzler v. Advanced Group 400*, *supra*, 25 Cal.4th 763 [107 Cal.Rptr.2d 617, 23 P.3d 1143], is similar to *Noble* in that the plaintiff in *Saelzler* was unable to show that *additional* security would have prevented her injuries. While the evidence showed that the incidence of criminal activity in an apartment complex was such as to warrant additional security, the plaintiff was unable to produce evidence, in opposition to a motion for summary judgment, that it was more probable than not that additional security measures would have prevented the attack. (*Saelzler v. Advanced Group 400*, *supra*, at p. 776.) In this case, unlike in *Saelzler*, there was no security at all and, as noted, if an armed guard had been standing beside Mukthar, it is more probable than not that the woman would not have hit Mukthar in his face.

In *Leslie G. v. Perry & Associates* (1996) 43 Cal.App.4th 472 [50 Cal.Rptr.2d 785] (*Leslie G.*), the plaintiff's theory was that the landlord's failure to repair a broken security gate was the cause of an assault and rape. However, there was no evidence that the assailant had entered through the gate, or that the gate was the only entry into the apartment building's garage, where the assault took place. The plaintiff had no evidence that it was more probable than not that the assailant used the broken gate. Thus, the court concluded, it was only speculation that the broken gate was the cause of the assault. (*Id.* at p. 488.) As we have explained, this is not true of the case at bar. There is nothing speculative about the effect of an armed guard standing at Mukthar's side.

Service, and trial court, reason that causation is as speculative as in *Leslie G.* because it is speculation whether the security guard, had he been at his post, would have prevented the woman from entering the store. This is a false line of inquiry. Mukthar was injured because the woman hit him. The correct question is whether the absence of a guard, standing next to Mukthar, was a substantial factor in the woman hitting Mukthar.

The same is true of Service's contention that nothing would have been done differently, if the guard had been present, because Mukthar had been instructed to go after shoplifters and grab merchandise that had been stolen. The point of this contention is that Mukthar would have gone to the door to prevent the women from leaving with the stolen merchandise, even if the guard had been present. However, the question of why Mukthar went to the door is not a relevant line of inquiry.

Service's contention that the presence of a guard would not have prevented the confrontation about the boy from arising, and would not have prevented the swearing and the shoplifting, is also beside the point. While these events explain how it came about that the woman hit Mukthar, they are not the actual, direct and operative cause of his injuries.

The ultimate question in this case is whether there is evidence that Service's failure to furnish a security guard increased the risk of the harm that befell Mukthar. We conclude that the inference is reasonable that the woman would not have hit him, had a guard been standing beside Mukthar. This means that, under the negligent undertaking doctrine, it is a question of fact whether Service is liable for Mukthar's injuries. Accordingly, we reverse the trial court's order granting the motion for summary judgment.

## DISPOSITION

The judgment is reversed. Appellant is to recover his costs on appeal.

Cooper, P. J., and Boland, J., concurred.

On May 19, 2006, the opinion was modified to read as printed above.