Filed 8/10/20

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| DARRELL ARCHER,<br><br>        Plaintiff and Appellant,<br>v.<br><br>COINBASE, INC. ,<br><br>        Defendant and Respondent. | A157690<br><br>(San Francisco City & County<br>Super. Ct. No. CGC-18-565281) |

Plaintiff Darrell Archer filed suit against Coinbase, Inc. (Coinbase), an online digital currency exchange platform, alleging causes of action for breach of contract, negligence, and conversion stemming from Coinbase's purported refusal to allow him to access a "forked" cryptocurrency (Bitcoin Gold) stored in his Coinbase account. The trial court granted summary judgment for Coinbase. Plaintiff filed an appeal from the order granting summary judgment. We affirm.

## I. BACKGROUND

Coinbase is an online digital currency platform that allows customers to send, receive, and store certain digital currencies. Plaintiff opened an account with Coinbase to allow him to purchase, trade, and store his digital currency.

A digital currency (also known as "cryptocurrency") is a type of currency maintained by a decentralized network of participants' computers, rather than a centralized government or organization. Anyone can volunteer

his or her computer to be part of such a network by running software that allows the computer to interact with the network. Once an individual joins a particular digital currency's network, he or she can interact with that digital currency. A holder of a digital currency can send it to another individual on the network, by authorizing that it be sent to the recipient's "public key," an alphanumeric string of characters that acts as a public identifier. Transactions between network participants are recorded on a "blockchain," which is a public ledger of digital currency transactions. Bitcoin is among the world's most well-known digital currencies, but there are thousands of digital currencies in existence. Each operates on its own unique network and blockchain ledger. Anyone can create a new digital currency, and new currencies are created almost daily.

On October 23, 2017, plaintiff had 350 Bitcoin stored in his account with Coinbase. That day, a third party launched a new cryptocurrency, "Bitcoin Gold," as a "fork." A fork is a way of creating a new digital currency by copying the source code of an existing digital currency's blockchain and repurposing it into a new digital currency network. When a developer creates a fork, the existing ledger of transactions from the original currency is used, and holders of the original currency are assigned equivalent units of the new currency on the new network. The new currency then "forks" into a separate blockchain ledger that records transactions of the new currency between participants in the new network.[1]

---

[1] As explained in a recent federal case, "Since its beginning, Bitcoin has inspired the creation of over one thousand other digital currencies. These new currencies often borrow from the initial Bitcoin program but make changes to the model in an attempt to create a new cryptocurrency with distinct functions or more suited to a specific market or niche. In other cases, Bitcoin has been modified by individuals in a way they believed would improve the Bitcoin itself, such as by allowing more transactions into a single

When Bitcoin Gold was created, Coinbase monitored and evaluated Bitcoin Gold's network and decided it would not support the new currency. Coinbase informed its customers via its website: " 'At this time, Coinbase cannot support Bitcoin Gold because its developers have not made the code available to the public to review. This is a major security risk.' " In 2018, the Bitcoin Gold network was attacked by hackers who stole millions of dollars of funds from trading platforms and individuals on its network.

On March 27, 2018, plaintiff filed suit against Coinbase. Shortly thereafter, plaintiff filed a first amended complaint, alleging various causes of action based on Coinbase's failure and refusal to allow him to receive his forked Bitcoin Gold currency and Coinbase's retention of control over plaintiff's Bitcoin Gold for its own benefit. Coinbase filed a demurrer to the first amended complaint, and following the trial court's rulings on the demurrer, plaintiff was left with three causes of action: negligence, conversion, and breach of contract.

The trial court subsequently granted summary judgment for Coinbase on all three causes of action. The court concluded, "The fact that Coinbase's User Agreement with Plaintiff contains no provision requiring Defendant to provide services related to any particular digital currency created by a third party is dispositive, requiring the Court to grant this motion."

Specifically, the trial court granted summary judgment on plaintiff's breach of contract claim because plaintiff failed to establish the existence of

---

block of blockchain. In these situations, the supporters of the new Bitcoin, have created a 'fork' through which the original Bitcoin blockchain/ledger is divided into two distinct, but identical, copies, (i) the original Bitcoin, and (ii) the new Bitcoin. The result is that any individual who owned the original Bitcoin now owns an identical amount of the new Bitcoin." (*BDI Capital, LLC v. Bulbul Investments LLC* (N.D.Ga., Mar. 11, 2020, Civ. No. 1-18-cv-3392-AT) __ F.Supp.3d __ [2020 WL 1161100 at p. *8].)

3

an agreement by Coinbase to provide the Bitcoin Gold to him.  Plaintiff's conversion claim failed because "the User Agreement did not create a right in Plaintiff to Bitcoin Gold, nor did it create an obligation in Defendant to support the Bitcoin Gold fork."  The court also concluded conversion "requires 'affirmative action to deprive another of property, not a lack of action,'" and plaintiff had failed to demonstrate Coinbase acted in any way to deprive him of his Bitcoin Gold currency.  Finally, the court rejected plaintiff's negligence claim based on the "economic loss rule," which the trial court held precludes liability for negligence based on obligations of contract, and because Coinbase had no legal duty to provide any services beyond those it agreed to provide in the user agreement.

Plaintiff appealed from the order granting summary judgment.[2]

## II.  DISCUSSION

### A.  *Standard of Review*

A "motion for summary judgment shall be granted if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (Code Civ. Proc., § 437c, subd. (c).)  "The moving party bears the burden of showing the court that the plaintiff 'has not established, and cannot reasonably expect to establish, a prima facie case . . . .'" (*Miller v. Department of Corrections* (2005) 36 Cal.4th 446, 460.)  Once the moving party has met that burden, the

---

[2] It is well established that an order granting summary judgment is a nonappealable order and, accordingly, plaintiff's notice of appeal is premature.  (*Levy v. Skywalker Sound* (2003) 108 Cal.App.4th 753, 761, fn. 7.)  However, judgment was entered in this matter on March 10, 2020.  In the interest of justice and to avoid delay, we exercise our discretion to construe the notice of appeal as an appeal from the judgment.  (Cal. Rules of Court, rule 8.104(d)(2); see *Mukthar v. Latin American Security Service* (2006) 139 Cal.App.4th 284, 288.)

burden shifts to the opposing party to show that a triable issue exists. (Code Civ. Proc., § 437c, subd. (p)(2).)

We review an order granting summary judgment de novo. (*Yanowitz v. L'Oreal USA, Inc.* (2005) 36 Cal.4th 1028, 1037.) "We liberally construe the evidence in support of the party opposing summary judgment and resolve doubts concerning the evidence in favor of that party." (*Ibid.*; *Brown v. Goldstein* (2019) 34 Cal.App.5th 418, 432.)

## B. Breach of Contract

Plaintiff's first amended complaint alleged a contract was established between plaintiff and Coinbase when he opened his account and paid Coinbase for its services. According to plaintiff, the contract was based on Coinbase "holding itself out as a cryptocurrency trading and storage exchange and platform" and its representations "to provide the usual and customary services of a cryptocurrency exchange as is usual and customary in such industry." Coinbase breached the agreement "by failing to provide to plaintiff or allow to properly deposit to plaintiff's account" his forked Bitcoin Gold cryptocurrency.

In support of its summary judgment motion, Coinbase presented evidence that upon registering an account in February 2014, and again in April 2015, plaintiff signed a "User Agreement" with Coinbase (User Agreement). The User Agreement contains no provision requiring Coinbase to provide support or services related to any particular digital currency created by a third party. Coinbase also presented evidence that during discovery, when it asked plaintiff to identify the contractual language supporting his breach of contract claim, plaintiff responded: " 'The contract is one provided by the laws of the State of California as applied to crypto currency exchanges and also a user agreement provided by Coinbase

5

although a previous judge deemed that agreement as "garbage" there are still parts of it that can be applied to this lawsuit.' "

In opposition, plaintiff conceded these facts were "undisputed," and argued his breach of contract claim was based not on a written agreement, but as alleged in his first amended complaint, on the "representations of the defendant in holding itself out as a cryptocurrency exchange and the representations to provide the usual and customary services in such industry."

We agree with the trial court that plaintiff's breach of contract claim fails because plaintiff did not establish the existence of an agreement with Coinbase to provide the Bitcoin Gold to him. (*Sonic Manufacturing Technologies, Inc. v. AAE Systems, Inc.* (2011) 196 Cal.App.4th 456, 464 [elements of breach of contract cause of action are existence of a contract, plaintiff's performance, the other party's breach, and damages]; *Levy v. State Farm Mutual Automobile Ins. Co.* (2007) 150 Cal.App.4th 1, 5 (*Levy*) [claim for breach of contract requires plaintiff specifically plead breach of agreed upon contractual provision].) It is undisputed that the User Agreement does not contain a provision requiring it to support or provide services for any particular digital currency created by a third party. Plaintiff also did not dispute he was aware at the time of the fork that Coinbase does not support every digital currency and that Coinbase has no duty or obligation to support every new digital currency that is created. Coinbase presented evidence it monitored and evaluated Bitcoin Gold's network when the new currency was created, determined the network was not stable or reliable, and issued a public statement that it would not support the new currency due to security

6

concerns.[3]  Plaintiff did not identify any representations, oral or written, by Coinbase that it would support Bitcoin Gold, or that it would provide "usual and customary services."

On appeal, plaintiff argues the trial court erred in its interpretation of the User Agreement.  First, plaintiff contends his "right and entitlement" to the Bitcoin Gold fork is established by his possession and ownership of Bitcoin on deposit with Coinbase.  But regardless of whether that is true, plaintiff's alleged ownership of Bitcoin Gold resulting from the cryptocurrency fork says nothing about *Coinbase's* contractual obligation to provide Bitcoin Gold to plaintiff.[4]

Plaintiff relies on the declaration of his cryptocurrency expert, Dr. Charles Evans, to argue Coinbase was *able* to transfer the Bitcoin Gold to him because it "possessed the only 'private keys' to open or access the cryptocurrency account containing plaintiff's Bitcoin Gold cryptocurrency" and the "necessary software for Coinbase to access Bitcoin Gold via their currently possessed 'private keys' already exists and is available to Coinbase

---

[3] Plaintiff argues Coinbase had *additional* reasons for not supporting Bitcoin Gold, but he does not provide any evidence to contradict these otherwise undisputed facts.

[4] We also reject plaintiff's conclusory suggestion, unsupported by legal authority or record citations, that "reliance upon the terms of a non-negotiated one-sided Agreement which lacks specificity and is vague must not be 'dispositive' of Plaintiff's right to his day in court."  We similarly disregard plaintiff's comments, again without citation to legal authority or the record, that the User Agreement lacked "customary language" stating "that the Agreement constitutes the total agreement between the parties."  To the contrary, both versions of the User Agreement submitted by Coinbase and electronically signed by plaintiff had integration clauses stating the agreement represented the entire agreement between the parties and superseded "any and all prior discussions, agreements and understandings of any kind . . . ."

7

without the need for them to develop such software should they choose to use it." Coinbase, on the other hand, presented evidence it could not do so because it had not developed the software to access Bitcoin Gold, and because the Bitcoin Gold network was not reliable or stable and posed a security risk. In fact, Evans appeared to concede that because of the way Coinbase designed its system and exchange platform, it was unable to provide plaintiff individual access to the forked Bitcoin Gold. But whether Coinbase *could* provide plaintiff with access to the forked currency is not dispositive; the pertinent question is whether Coinbase had a contractual obligation to do so, and the undisputed evidence submitted by Coinbase shows it did not.

Plaintiff next urges there was a disputed issue of material fact about the interpretation of uncertain language in the User Agreement. Specifically, he contends the word "support" can have multiple meanings, and that custom and usage of words in a trade are admissible to explain the meaning of terms in a contract. Though the basis of his argument is somewhat unclear, plaintiff apparently contends the trial court should have considered parol evidence in determining whether the User Agreement created an obligation by Coinbase to "support" the Bitcoin Gold fork.

As an initial matter, the issue is forfeited because plaintiff did not raise it in the trial court. (*Feduniak v. California Coastal Com.* (2007) 148 Cal.App.4th 1346, 1381 [failure to raise issue in trial court generally results in waiver on appeal]; *Bogacki v. Board of Supervisors* (1971) 5 Cal.3d 771, 780 ["The general rule that a legal theory may not be raised for the first time on appeal is to be stringently applied when the new theory depends on controverted factual questions whose relevance thereto was not made to appear at trial."].) In addition, although plaintiff asserts the word "support" is ambiguous and we should look to industry custom to interpret it, he does

8

not identify its use in any contractual provision.  Further, plaintiff  cannot rely on "custom and usage" to create contractual obligations not contemplated by the parties.  (See, e.g., *Levy, supra*, 150 Cal.App.4th at pp. 5–8 [sustaining demurrer to breach of contract claim based on insurer's failure to cover repairs under "industry standards" not required by policy]; *White Point Co. v. Herrington* (1968) 268 Cal.App.2d 458, 468 [court could not take judicial notice of trade and custom to create new terms for agreement; custom and usage may be admissible to interpret a contract, but not to establish one].) And in any event, plaintiff  does not offer any evidence of the specific meaning of "support" in the cryptocurrency context.[5]

Plaintiff also contends the trial court found it undisputed that both Coinbase and plaintiff knew "support" meant Coinbase "could arbitrarily decide to keep [plaintiff's] property."  But the trial court found no such thing, deciding only that it was undisputed Coinbase did not have a contractual obligation to support or provide services for any particular cryptocurrency, as plaintiff admitted.

We further reject plaintiff's attempted reliance on parol evidence because the User Agreement contains an integration clause stating it is the

---

[5] Plaintiff's expert, Evans, did not provide any interpretation of the term "support," nor any of the terms in the User Agreement.  He states in his declaration that when determining whether to support a new fork, Coinbase relies on "subjective and self-serving criteria," such as demand and value of the new currency and the effort required to support it.  Evans asserts these criteria are "arbitrary and capricious" and "without any indication or published industry standard as to what are acceptable standards" for refusing to support a fork.  But Evans does not provide any explanation of custom and usage in the industry.  At most he states that "[p]roviding services for 'fork' occurrences in the cryptocurrency arena is a usual and customary service," but that conclusory statement is unexplained and unsupported by any admissible evidence that Coinbase agreed to provide that "usual and customary service" to plaintiff or any of its customers.

"entire understanding and agreement" of the parties.[6] "When the parties to a written contract have agreed to it as an 'integration'—a complete and final embodiment of the terms of an agreement—parol evidence cannot be used to add to or vary its terms." (*Masterson v. Sine* (1968) 68 Cal.2d 222, 225; *Brown v. Goldstein*, *supra*, 34 Cal.App.5th at p. 432.) Plaintiff did not present any extrinsic evidence of a collateral agreement in opposition to the summary judgment motion. Accordingly, plaintiff cannot impose additional obligations on Coinbase, such as an obligation to "support" Bitcoin Gold or to provide "usual and customary services" of a cryptocurrency exchange, that did not exist when he accepted the User Agreement.

Plaintiff also poses rhetorical questions to this court about what *he* understood the parties' agreement to mean. But as he acknowledges, "[a] contract must be so interpreted as to give effect to the mutual intention of the parties as it existed at the time of contracting, so far as the same is ascertainable and lawful." (Civ. Code, § 1636.) In doing so, we do not consider the subjective understanding of one of the parties, but the parties' mutual, objective manifestations of assent. (*Serafin v. Balco Properties, Ltd., LLC* (2015) 235 Cal.App.4th 165, 173; *Koenig v. Warner Unified School Dist.* (2019) 41 Cal.App.5th 43, 58 ["It is the parties' expressed objective intent, not their unexpressed subjective intent, that governs."].)

Further, plaintiff attempts to rely on several provisions of the User Agreement to establish an obligation by Coinbase to support Bitcoin Gold, but those provisions specifically refer to "Bitcoin," and not any other digital currency. Though plaintiff argues nothing advises the customer he may not be able to access the private keys for his forked digital currency, plaintiff does

---

[6] As noted above, we reject plaintiff's conclusory argument to the contrary that fails to cite to the record.

not dispute he knew at the time of the Bitcoin Gold fork that Coinbase does not support every digital currency.

In sum, plaintiff has failed to establish the existence of a disputed issue of material fact showing Coinbase agreed to provide plaintiff access to his forked Bitcoin Gold currency.

## C. *Conversion*

The trial court determined plaintiff failed to establish his conversion claim for several reasons: (1) the User Agreement did not create a right in plaintiff to Bitcoin Gold, (2) it did not create an obligation in Coinbase to support the Bitcoin Gold fork, and (3) plaintiff did not show Coinbase affirmatively acted in any way to deprive plaintiff of his Bitcoin Gold. Plaintiff contends the trial court erred for all of the reasons discussed above with respect to his breach of contract claim.

The elements of a claim for conversion are (1) the plaintiff's ownership or right to possession of the property, (2) the defendant's wrongful act or disposition of the property that interferes with the plaintiff's possession, and (3) damages. (*Los Angeles Federal Credit Union v. Madatyan* (2012) 209 Cal.App.4th 1383, 1387; *McKell v. Washington Mutual, Inc.* (2006) 142 Cal.App.4th 1457, 1491.) Conversion requires the defendant to take some affirmative action to exercise dominion over or deprive a plaintiff of his or her property. (*Spates v. Dameron Hospital Assn.* (2003) 114 Cal.App.4th 208, 222 [rejecting conversion claim based on hospital's delivery of former patient's body to coroner after failed attempt to return it to next of kin]; *Simonian v. Patterson* (1994) 27 Cal.App.4th 773, 781 [defendant's act of moving items out of apartment of daughter's ex-boyfriend was not conversion because defendant did not have possession of the items and derived no personal gain from their transfer].) "Not every failure to deliver property to

11

the rightful owner constitutes a conversion. [Citation.] 'To establish a conversion, it is incumbent upon the plaintiff to show an intention or purpose to convert the goods and to exercise ownership over them, or to prevent the owner from taking possession of the property.' . . . [¶] . . . [C]onversion requires affirmative action to deprive another of property, not a lack of action." (*Spates*, at p. 222.)

Plaintiff failed to establish Coinbase took any such action here. In support of its summary judgment motion, Coinbase submitted evidence it had not taken any affirmative action with respect to Bitcoin Gold, and that plaintiff's Bitcoin Gold remains on the public network created by a third party. Though plaintiff "disputed" those statements, he provided no admissible evidence to contradict them, citing only to Coinbase's representations that the Bitcoin Gold was securely stored on its website. Indeed, plaintiff's declaration in support of his opposition to the summary judgment motion admits Coinbase took no affirmative action to possess his property, stating: "By Coinbase taking no action, knowing I had no ability to access my Bitcoin Gold on my own, Coinbase's inaction was tantamount to direct conduct depriving me of my property and was Coinbase's way of exercising complete dominion and control over my property thus depriving me of it." His conclusory contention that inaction amounts to an affirmative exercise of dominion and control is unsupported by legal authority and is contradicted by the analyses in the cases cited above.

As plaintiff correctly notes, this case—concerning the recovery of damages for failure of a cryptocurrency exchange to provide access to a forked digital currency created by a third party—presents an issue of first impression in California. We find persuasive, however, the reasoning of a federal district court in Georgia considering a similar claim. There, the court

12

granted summary judgment for the digital currency exchange on the plaintiff's claim for conversion of a forked digital currency. Like plaintiff here, the plaintiff in that action alleged a cause of action for conversion based on the exchange's failure to give the plaintiff its Bitcoin Gold. In explaining its ruling, the court reasoned:

"[I]n order for a bitcoin owner who holds [his or] her virtual currency in an exchange (or other type of shared wallet) to access the forked currency, the exchange must take some affirmative action. The Court would be imposing a major new duty on all cryptocurrency exchanges operating in Georgia to affirmatively honor every single bitcoin fork. Bitcoin investors are aware they are operating in an unregulated market, and therefore it seems more reasonable to place the burden to ensure access to forked currency on the investors themselves. There is no requirement that investors keep their coins in exchanges; they can always withdraw the coins to their own private wallets. In the unregulated cryptocurrency market, potential investors are well advised to ensure that the terms of service of the exchange they are using clearly spell out what the exchange's obligations are with respect to forked currency, if any." (*BDI Capital, LLC v. Bulbul Investments LLC, supra*, ___ F.Supp.3d at p.___, fn. omitted [2020 WL 1161100 at p. *10].) We find the analysis persuasive and equally applicable here. Plaintiff offered no admissible evidence that Coinbase asserted control or ownership over the Bitcoin Gold currency in his account, and no evidence that Coinbase had a duty, contractual or otherwise, to give plaintiff access to the Bitcoin Gold. We decline to impose a major new absolute tort duty on digital currency exchanges to honor forked currencies.

In sum, we conclude the trial court properly granted summary judgment because the undisputed facts show Coinbase took no affirmative

13

action to deprive plaintiff of a property right or exercise dominion over plaintiff's Bitcoin Gold currency.

## D. Negligence

Finally, plaintiff contends the trial court erred in granting summary judgment on his negligence claim for the same reasons it erred in granting summary judgment on his conversion and breach of contract claims.

In granting summary judgment, the trial court concluded plaintiff's negligence claim failed because Coinbase had no legal duty to provide services beyond those it agreed to provide in the User Agreement. We agree.

To prevail in a negligence action, a plaintiff must establish the defendant owed a legal duty, the defendant breached that duty, and the breach proximately caused the plaintiff's damages. (*Beacon Residential Community Assn. v. Skidmore, Owings & Merrill LLP* (2014) 59 Cal.4th 568, 573.) "Absent a legal duty, any injury is an injury without actionable wrong. [Citation.] 'Duty, being a question of law, is particularly amenable to resolution by summary judgment.'" (*Romero v. Superior Court* (2001) 89 Cal.App.4th 1068, 1078.)

In the first amended complaint, plaintiff alleged Coinbase owed him a duty to allow him to "acquire" all cryptocurrency to which he was entitled, based on his opening an account with Coinbase and complying with Coinbase's terms and conditions for the account.

"A person may not ordinarily recover in tort for the breach of duties that merely restate contractual obligations." (*Aas v. Superior Court* (2000) 24 Cal.4th 627, 643, superseded by statute on other grounds as stated in *Rosen v. State Farm General Ins. Co.* (2003) 30 Cal.4th 1070, 1079–1080.) Thus, plaintiff may not recover in tort based solely on allegations that Coinbase negligently performed its contractual duties. (See *Erlich v. Menezes*

14

(1999) 21 Cal.4th 543, 552.)  "[A] breach of contract is tortious only when some independent duty arising from tort law is violated."  (*Id.* at p. 554.)

Plaintiff concedes Coinbase had no contractual obligation to support or provide services related to any particular digital currency created by a third party.  Although he argues his negligence claim is not based on contract, plaintiff fails to identify any independent duty of care Coinbase owed him.  He contends Coinbase was required to provide "the usual and customary" services, including services for " 'fork' occurrences," but he identifies no basis for that alleged duty, nor evidence of any written or oral representation by Coinbase that it would provide such services, as alleged in the first amended complaint.  Accordingly, the trial court did not err in granting summary judgment on this claim.

### III.  DISPOSITION

The judgment is affirmed.  Coinbase is to recover its costs on appeal.

 

 

_____
Margulies, J.


We concur:


_____
Humes, P. J.


_____
Sanchez, J.


A157690
*Archer v. Coinbase*

Trial Court:       San Francisco City and County

Trial Judge:       Ethan P. Schulman

Counsel:

Darrell Archer, in pro. per., for Plaintiff and Appellant.

DLA Piper LLP (US), Matthew F. Miller, Michael J. Fluhr, Mandy Chan and Mustafa Moiz for Defendant and Respondent.