Filed 2/7/25

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

|  |  |
|---|---|
| HOVIK GHARIBIAN et al., | B325859 |
| Plaintiffs and Appellants, | (Los Angeles County Super. Ct. No. 20STCV43967) |
| v. | |
| WAWANESA GENERAL INSURANCE COMPANY, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County. Barbara Ann Meiers, Judge. Affirmed.

Keosian Law and Natalie Hairabedian Suri for Plaintiffs and Appellants.

Sheppard, Mullin, Richter & Hampton, John D. Edson and Matthew G. Halgren for Defendant and Respondent.

_____

Following a wildfire near their home, plaintiffs and appellants Hovik Gharibian (Gharibian) and Caroline Minasian (Minasian) submitted a claim to their property insurer, defendant and respondent Wawanesa General Insurance Company (Wawanesa). Wawanesa ultimately paid plaintiffs more than $20,000 for professional cleaning services that they never used. Dissatisfied with the resolution of their claim, plaintiffs filed the instant lawsuit against Wawanesa for breach of contract and breach of the implied covenant of good faith and fair dealing.

The trial court granted Wawanesa's motion for summary judgment, and plaintiffs appeal. Because plaintiffs' insurance policy did not provide coverage for the claimed loss, Wawanesa did not breach (and could not have breached) the insurance policy. Accordingly, we affirm.

## FACTUAL BACKGROUND

*The insurance policy*

Plaintiffs obtained a Wawanesa homeowner property insurance policy for their house in Granada Hills covering the period September 8, 2019, to September 8, 2020. In a section of the policy titled "Perils Insured Against," the policy provides that Wawanesa will "insure against direct physical loss to property." (Bolding & capitalization omitted.) The policy's terms include a $2,000 deductible.

*A nearby fire results in debris, but not burn damage, to plaintiffs' house*

On October 10, 2019, the Saddle Ridge wildfire began in the foothills of northern Los Angeles County. The fire burned about half a mile away from plaintiffs' property; plaintiffs' property did not suffer any burn damage.

Even though plaintiffs kept their doors and windows closed, debris still entered their home, with more debris falling outside their home and in their swimming pool. While there was the smell of wildfire smoke, it dissipated over time. In fact, Minasian testified that she could no longer smell the smoke by December 31, 2019, less than three months after the fire.

*Plaintiffs report a claim and Wawanesa retains a cleaning contractor*

Plaintiffs retained counsel, who reported plaintiffs' claim to Wawanesa the week after the fire began and handled all subsequent communications with Wawanesa regarding the claim. Without waiving its coverage defenses, Wawanesa started making arrangements for an expert to determine what cleaning, if any, should be conducted. In November 2019, PuroClean inspected the property and prepared an estimate ($4,308.90) of what it would cost to clean the property inside and out, including the contents of the house, doors, windows, and HVAC system. Although PuroClean was willing to do this work for the estimated price, plaintiffs did not hire PuroClean to do the work.

*The parties hire hygienists to inspect the home, and Wawanesa issues a check to plaintiffs to cover cleaning costs*

Gharibian hired L.Y. Environmental, Inc., to inspect the property and write a report. Yonan Benjamin, a "certified industrial hygienist/consultant and a senior environmental engineer for L.Y. Environmental, Inc.," testified that soot and ash were present at the property. But, soot by itself does not physically damage a structure. And ash only creates physical damage to a structure if it is left on metal or vinyl and is then exposed to water, but he did not find any evidence of rusting metal or oxidized vinyl. He further confirmed that there was no

3

burn or heat damage at the property.  Thus, he concluded that the home could be fully cleaned by wiping the surfaces, HEPA vacuuming, and power washing the outside.

Meanwhile Wawanesa retained industrial hygienist Clark Seif Clark (CSC) to verify what needed to be done by conducting new tests and providing its own cleaning recommendations.  CSC determined that the interior of the home could be cleaned through normal processes, such as wiping with wet disposable cloths and using a HEPA vacuum to clean the attic.  According to CSC, the HVAC system did not warrant cleaning.

The following week, Wawanesa paid plaintiffs $2,308.90, representing the PuroClean estimate less the $2,000 deductible.

*Plaintiffs clean their home on their own*

Plaintiffs did not hire professional cleaners to clean their home.  Instead, they cleaned the interior and exterior of their home, including their pool, on their own.

By December 2019, plaintiffs were not aware of any visible wildfire debris that remained either outside or inside their home.  Gharibian is not aware of anything at his property that was physically damaged.

*Plaintiffs' counsel submits a new repair estimate*

Plaintiffs then retained The Croisdale Group Inc. (Croisdale) to estimate the cost of cleaning their house.  Croisdale prepared an estimate ($35,553.10) on March 14, 2020.  Croisdale's estimate included general cleaning, as well as interior painting, exterior wood and stucco painting, replacement of attic

4

insulation, swimming pool work, and cleaning the HVAC system.[1]

*Additional efforts to resolve the dispute and plaintiffs' claim*

In light of Croisdale's new estimate, Wawanesa retained IAS Claim Services (IAS) to try to settle plaintiffs' claim. IAS reinspected the property with PuroClean and plaintiffs' attorney on September 18, 2020. As a concession to plaintiffs, PuroClean agreed to revise its estimate ($20,718.09) to include disputed cleaning services. Again, PuroClean was willing to perform the quoted services at the estimated cost, but plaintiffs did not hire PuroClean to do the work.

Later that month, based upon PuroClean's revised estimate and as a concession, Wawanesa issued supplemental checks totaling $16,409.19 to plaintiffs. In light of the prior payment ($2,308.90) and plaintiffs' deductible ($2,000), this brought the total to $20,718.09—the amount of the PuroClean estimate.

Since there had been discussion of cleaning plaintiffs' swimming pool, on November 13, 2020, Wawanesa asked plaintiffs to provide an estimate or invoices for pool cleaning so that it could issue reimbursement. Plaintiffs did not respond. On December 10, 2020, even though Gharibian had cleaned his pool on his own and plaintiffs' hygienist did not call for pool cleaning, in an effort to resolve the claim, Wawanesa paid plaintiffs an additional $2,400 for pool cleaning, which was the amount that Croisdale had estimated for that service.

---

[1]  Notably, as set forth above, Mr. Benjamin's November 2019 report did not call for any of these repairs.

# PROCEDURAL BACKGROUND

*The complaint*

On November 17, 2020, plaintiffs[2] filed the instant lawsuit against Wawanesa. The operative pleading is the first amended complaint, which alleges claims for breach of contract and breach of the duty of good faith and fair dealing.

*Wawanesa's motion for summary judgment*

Following discovery, Wawanesa moved for summary judgment against plaintiffs and summary adjudication against the Sarkisyans. Regarding plaintiffs, Wawanesa argued that they did not meet their burden of proving that an event fell within the scope of the policy's coverage. After all, "there [was] no evidence of a physical loss." CSC found no evidence of physical damage; plaintiffs' hygienist (Mr. Benjamin) admitted that soot and char debris do not cause physical damage, and the ash did not cause damage at plaintiffs' property; and Gharibian testified that he was unaware of any physical damage.

Furthermore, "[t]he fact that Wawanesa made generous claim payments for non-covered debris cleaning did not create coverage when coverage did not otherwise exist. [Citation.]"

*Plaintiffs' opposition*

Plaintiffs opposed the motion and filed objections to Wawanesa's evidence. According to plaintiffs, "the Saddleridge Wildfire prevailed upon [their] home, causing it to suffer

---

[2] Plaintiffs filed their complaint with coplaintiffs Grigor and Hilda Sarkisyan. Plaintiffs and the Sarkisyans did not know each other. Rather, the attorney representing plaintiffs and the Sarkisyans filed one complaint because both couples were bringing claims against Wawanesa regarding alleged wildfire debris following the same wildfire.

substantial property damage," specifically the "debris that covered [their] property[, which] was easily apparent." In so arguing, plaintiffs relied upon case law that has held "that particles in the air can cause damage even if they are invisible to the naked eye." Similarly, "[t]he physical damage and health hazards that were caused by the Saddleridge Wildfire constitute physical loss, such that would trigger and did trigger coverage. If coverage were not triggered and benefits were not owed, why would [Wawanesa] make payments" to plaintiffs?

In support, plaintiffs offered a declaration from Mr. Benjamin. Based upon his declaration, plaintiffs argued that "[t]he cleaning recommended by L.Y. Environmental will, more likely than not, compromise the integrity and/or cause further damage to some building materials. Once the cleaning of the property is properly completed, the property should be re-evaluated in order to determine whether additional damages are discovered and additional cleaning and repairs are required."

Because Wawanesa's motion also challenged some of the Sarkisyans' claims, counsel filed an expert declaration by Viken Melkonian, "a certified indoor environmental consultant and a senior environmental engineer for KCE Matrix, Inc," who had inspected the Sarkisyan property. He averred that the Sarkisyan property had been "extensively impacted" by debris from the Saddle Ridge wildfire and recommended extensive remediation.

*Trial court order*

Following oral argument, the trial court granted Wawanesa's motion for summary judgment as to plaintiffs and summary adjudication as to the Sarkisyans for the reasons set

7

forth in Wawanesa's moving papers.[3]  After pointing out deficiencies in the parties' papers, the trial court determined: "[B]ottom line, even considering all that is before the court, the court in its role to interpret the insurance policy involved in the case has concluded that no evidence of 'physical loss' as that term is used and intended in the policy and in keeping with case law on the subject is before the court, and certainly not enough to create any material issue of fact in this regard."

*Judgment and appeal*

Plaintiffs' appeal ensued.[4]

## DISCUSSION

I. *Standard of review*

We review the trial court's order granting summary judgment de novo, liberally construing the evidence in support of the party opposing summary judgment and resolving doubts concerning the evidence in that party's favor.  (*Gonzalez v. Mathis* (2021) 12 Cal.5th 29, 39.)

"[W]e may affirm on any basis supported by the record and the law.  [Citation.]"  (*Vulk v. State Farm General Ins. Co.* (2021) 69 Cal.App.5th 243, 254.)

---

[3]  The Sarkisyans' breach of contract cause of action remained pending.

[4]  As pointed out in Wawanesa's brief, plaintiffs actually filed their notice of appeal prematurely—after Wawanesa's motion for summary judgment had been granted but before judgment was actually entered.  Given that judgment has since been entered, we deem plaintiffs' premature notice of appeal to have been taken from the judgment.  (*Mukthar v. Latin American Security Service* (2006) 139 Cal.App.4th 284, 288.)

8

II. *The trial court properly adjudicated plaintiffs' breach of contract claim in favor of Wawanesa*

    A. <u>Relevant law</u>

The elements of a cause of action for breach of an insurance contract are (1) the contract, (2) the insured's performance or excuse for nonperformance, (3) the insurer's breach, and (4) resulting damages.  (*Janney v. CSAA Ins. Exchange* (2021) 70 Cal.App.5th 374, 390.)

""""While insurance contracts have special features, they are still contracts to which the ordinary rules of contractual interpretation apply."  [Citations.]'"  (*Westoil Terminals Co., Inc. v. Industrial Indemnity Co.* (2003) 110 Cal.App.4th 139, 145.)  Thus, we "interpret [insurance policy] language "'in [its] 'ordinary and popular sense,' unless 'used by the parties in a technical sense or a special meaning is given to them by usage.'""  [Citation.]  We must also 'interpret the language in context.'  [Citation.]"  (*Tustin Field Gas & Food, Inc. v. Mid-Century Ins. Co.* (2017) 13 Cal.App.5th 220, 226.)

"The insured has the initial burden of showing that a claim falls within the scope of coverage, and a court will not '"indulge in a forced construction of the policy's insuring clause to bring a claim within the policy's coverage.'"  [Citation.]"  (*Dua v. Stillwater Ins. Co.* (2023) 91 Cal.App.5th 127, 136.)

    B. <u>Analysis</u>

Applying these legal principles, we readily conclude that the trial court did not err.  In order to defeat Wawanesa's motion, plaintiffs had to establish (or at least create a triable issue of fact) that their claim was covered by their insurance policy.  Thus, they had to show that there was a "direct physical loss to property."

"Under California law, direct physical loss or damage to property requires a distinct, demonstrable, physical alteration to property. The physical alteration need not be visible to the naked eye, nor must it be structural, but it must result in some injury to or impairment of the property as property." (*Another Planet Entertainment, LLC v. Vigilant Ins. Co.* (2024) 15 Cal.5th 1106, 1117 (*Another Planet*).)[5]

Here there is no evidence of any "direct physical loss to [plaintiffs'] property." The wildfire debris did not "alter the property itself in a lasting and persistent manner." (*Another Planet, supra*, 15 Cal.5th at p. 1149.) Rather, all evidence indicates that the debris was "easily cleaned or removed from the property." (*Another Planet, supra*, 15 Cal.5th at p. 1140.) Such debris does not constitute "direct physical loss to property." (*Ibid*.)

In reaching this conclusion, we reject plaintiffs' contention that *Another Planet* does not govern the instant case. While *Another Planet* answered the question of whether the actual or potential presence of the COVID-19 virus on an insured's premises could constitute direct physical loss or damage (*Another Planet, supra*, 15 Cal.5th at p. 1117), its reasoning squarely applies here. Before answering the question posed, our Supreme Court pointed out that it had "not previously interpreted the phrase 'physical loss or damage' (or 'direct physical loss or damage') as the phrase is commonly used in property insurance policies." (*Another Planet, supra*, at p. 1123.) It went on to "summarize the most pertinent" appellate court cases that

---

[5] We disregard plaintiffs' reliance upon an unpublished trial court order that seems to have held differently.

addressed the meaning of this phrase. (*Ibid*.; see also *id*. at pp. 1123–1134.) With this case law in mind, along with principles of contract interpretation, the Court concluded that "direct physical damage" means that "the property itself [was] physically harmed or impaired." (*Id*. at p. 1137.) "Loss" too encompasses some physicality to the loss. (*Id*. at p. 1138.) In sum, "[t]he long-standing California view that direct physical loss to property requires a distinct, demonstrable, physical alteration of property is correct." (*Id*. at p. 1139.) Nothing in this analysis or conclusion suggests that it is limited to claims related to COVID-19.

*Armstrong World Industries, Inc. v. Aetna Casualty & Surety Co.* (1996) 45 Cal.App.4th 1, cited by plaintiffs, is readily distinguishable. *Armstrong* dealt with *third* party liability coverage, which is "'wholly different'" than first party property damage coverage. (*United Talent Agency v. Vigilant Ins. Co.* (2022) 77 Cal.App.5th 821, 837.) Thus, *Armstrong* is not persuasive precedent in the instant context. (*Inns-by-the-Sea v. California Mutual Ins. Co.* (2021) 71 Cal.App.5th 688, 701, fn. 16.)

Urging us to reverse, plaintiffs direct us to Mr. Benjamin's deposition testimony that "ash can create physical damage to a structure," and ash was detected at plaintiffs' property. But plaintiffs ignore Mr. Benjamin's qualification that ash only causes physical damage to property when it becomes wet, and no such damage existed on plaintiffs' property.

Plaintiffs also rely upon Mr. Benjamin's statement in his declaration that "[t]he cleaning recommended by L.Y. Environmental will, more likely than not, compromise the integrity and/or cause further damage to some building

11

materials." There are at least two problems with this statement. First, it contradicts his prior deposition testimony that the debris did not require painting, stucco work, attic insulation or replacement, or HVAC repairs, and that power washing would not cause damage to the structure. It is well-settled that a party cannot create a triable issue of fact with a declaration that contradicts the declarant's earlier deposition testimony. (*Whitmire v. Ingersoll-Rand Co.* (2010) 184 Cal.App.4th 1078, 1087; *Visueta v. General Motors Corp.* (1991) 234 Cal.App.3d 1609, 1613; *Benavidez v. San Jose Police Dept.* (1999) 71 Cal.App.4th 853, 860.)

Second, to the extent his declaration is being offered as expert testimony, his statement is, at best, speculative. And we may disregard speculative expert testimony. (See, e.g., *Property California SCJLW One Corp. v. Leamy* (2018) 25 Cal.App.5th 1155, 1163.)

Plaintiffs also direct us to Mr. Melkonian's expert declaration. But his testimony pertains solely to the Sarkisyan property. It sheds no light on the scope of the damage, if any, at plaintiffs' property.

Finally, the fact that Wawanesa made payments to plaintiffs even though there was no coverage is irrelevant. (See, e.g., *State Farm Fire & Casualty Co. v. Superior Court* (1988) 206 Cal.App.3d 1428, 1431 ["Because insurance companies often adjust claims for reasons entirely unrelated to their merits, [the insurance company's] decision to pay money to the [insureds] may not be construed either as an admission of liability or as the substantive equivalent of accepting its obligations under the policy"].)

III.  *All remaining arguments are moot*

In light of our conclusion that Wawanesa did not breach (and could not have breached) its insurance policy because plaintiffs did not have a covered claim, all remaining arguments raised by the parties are moot.  (*Waller v. Truck Ins. Exchange, Inc.* (1995) 11 Cal.4th 1, 36 [without coverage there can be no liability for bad faith on the part of the insurer]; *McLaughlin v. National Union Fire Ins. Co.* (1994) 23 Cal.App.4th 1132, 1164 [no independent cause of action for punitive damages].)

**DISPOSITION**

The judgment is affirmed.  Wawanesa is entitled to costs on appeal.

<u>CERTIFIED FOR PUBLICATION</u>.


_____, J.
ASHMANN-GERST

We concur:



_____, P. J.
LUI



_____, J.
CHAVEZ

13